In re Robert Vaughn **GIBBS,** Debtor.

**COOPERS & LYBRAND, LTD.,** as Receiver and Manager of the Assets of William C. Player, Plaintiff,

v.

Robert Vaughn **GIBBS,** Defendant.

**Bankruptcy No. 88–04478.**
**Adv. No. 88–0893 TS.**

United States Bankruptcy Court,
D. New Jersey.

Nov. 16, 1989.

Walter J. Fleischer, Jr., Shanley & Fischer, P.C., Somerville, N.J., and Alan D. Lash, Greer, Homer & Bonner, P.A., Miami, Fla., co-counsel, for plaintiff.

Jules L. Rossi, Long Branch, N.J., and Gerald J. Houlihan, Steel, Hector & Davis, Miami, Fla., co-counsel, for defendant.

## MEMORANDUM OPINION AND ORDER

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the Court on a motion by plaintiff Coopers & Lybrand, Ltd., ("plaintiff" or "Coopers & Lybrand") for summary judgment under Bankruptcy Rule 7056, which makes Rule 56 of the Federal Rules of Civil Procedure applicable in adversary proceedings. The complaint alleges that a debt of defendant Robert Vaughn Gibbs ("defendant" or "Gibbs") to plaintiff is nondischargeable in bankruptcy under 11 U.S.C. § 523 (the "Bankruptcy Code" or "Code"), and that defendant should be denied a discharge of all of his debts under Code § 727. The motion contends that the doctrine of res judicata requires that the Court accept a prior consent judgment by the United States District Court for the Southern District of Florida as dispositive of the cause of action under Code § 523.[1] This opinion shall constitute the Court's findings of fact and conclusions of law.

### I.

The allegations in the complaint filed in this adversary proceeding are as follows.

In May, 1981 Seagate Development Corporation ("Seagate Development"), a Florida corporation owned or controlled by defendant Gibbs, purchased the Seagate Hotel, a resort hotel situated in Delray Beach, Florida. Seagate Development subsequently purchased adjacent beachfront property as well.

---

1. The plaintiff does not contend that the consent judgment is dispositive as to the cause of action under Code § 727. Hence the motion is actually for partial summary judgment.

On December 28, 1982 another corporation controlled by Gibbs entered into an agreement with William C. Player ("Player") under which Player would purchase fifty percent of the common stock of Seagate Development for $2,000,000. Steps were taken to consummate the agreement, including the transfer of funds from entities controlled by Player to entities controlled by Gibbs.

On February 3, 1983 the Supreme Court of Ontario, Canada entered an injunction restraining Player from disposing of any of his assets on the basis of evidence of fraud by Player in connection with a large, complex transaction involving Canadian real estate and known as the "Cadillac Fairview transaction."

An internal document from one of Gibbs' corporations involved in the Seagate transaction which is dated February 7, 1983, four days after the Supreme Court of Ontario enjoined Player from disposing of his assets, indicates knowledge that Player is facing "potential problems" in Canada, and that as a result Gibbs could "end up with an unwanted partner" in Seagate Development.[2] As a result, the agreement between Player and Gibbs was changed so that, essentially, Player surrendered his common stock in Seagate Development and received preferred stock instead.

From April through July, 1983 a corporation controlled by Gibbs received further funds from Player and transferred them to third persons on Player's behalf.

On August 17, 1983 the Supreme Court of Ontario appointed Coopers & Lybrand as receiver and manager of all monies received by Player in connection with the Cadillac Fairview transaction. On August 20, 1983 the same court entered another order appointing Coopers & Lybrand as receiver and manager of all of Player's assets. On October 27, 1983 Coopers & Lybrand gave Seagate Development written notice of its appointment as receiver and manager, and presented an instrument under which Player authorized the transfer of his preferred stock in Seagate Development to Coopers & Lybrand. Although Player had no interest of record in Seagate Development after that point, he continued to receive accommodations on a complimentary basis at the Seagate Hotel for extended periods in 1983, 1984 and 1985. The charges incurred by Player at the hotel during this period, for which he was never billed at the instructions of Gibbs, were in excess of $100,000.

Player was subsequently convicted of criminal fraud in connection with his role in the Cadillac Fairview transaction and sentenced to a prison term of fifteen years.[3]

In 1984 Gibbs and his affiliates created Seagate Land Development, Inc. ("Seagate Land Development") and transferred the beachfront property owned by Seagate Development to Seagate Land Development, with nothing of value in return to Seagate Development. In August, 1984 and September, 1985 Seagate Development and Seagate Land Development refinanced their mortgages, from which Gibbs and his affiliates received cash of more than $1,200,000. The net result of these transactions was to remove the equity from Seagate Development and Seagate Land Development. Partially as a result of the additional debt service, the Seagate Hotel was thereafter not able to operate profitably. The September, 1985 mortgage loan was foreclosed and the lender purchased the property at the foreclosure sale.

On July 7, 1986 Coopers & Lybrand filed a complaint against Gibbs and his affiliates in the United States District Court for the Southern District of Florida. The causes of action asserted in the Florida action included violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, violation of § 10(b) of the Securities and Ex-

---

**2.** Page 10 of the amended complaint in the Florida action, annexed as an exhibit to the complaint in this adversary proceeding.

**3.** The extent of the fraud perpetrated by Player in connection with the Cadillac Fairview trans-

action is unclear from the amended complaint, but it appears that he somehow converted in excess of one hundred million dollars to his own use.

change Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, intentional conversion, intentional breach of fiduciary duty, intentional waste of corporate assets, and violation of the Florida Civil Theft Statute, § 812.014 of the Florida Statutes.

After extensive discovery, and shortly before trial, the parties to the Florida action entered into a settlement agreement dated July 9, 1987. On the same date the District Court entered a final judgment which provided in pertinent part as follows:

1. Judgment is hereby entered against ROBERT V. GIBBS, INTERNATIONAL CAPITAL & DEVELOPMENT CORPORATION, INTERNATIONAL CONSOLIDATED INDUSTRIES, INC., DEVINCO OF FLORIDA, INC., SEAGATE DEVELOPMENT CORPORATION and SEAGATE LAND DEVELOPMENT, INC., jointly and severally, in the amount of U.S. $1,700,000.00, together with interest thereon at the statutory rate from the date of entry of this Judgment. *By stipulation of the parties, this Judgment shall be non-dischargeable in any proceeding brought by or against ROBERT V. GIBBS, SEAGATE DEVELOPMENT CORPORATION, SEAGATE LAND DEVELOPMENT, INC., DEVINCO OF FLORIDA, INC., INTERNATIONAL CAPITAL & DEVELOPMENT CORPORATION, and INTERNATIONAL CONSOLIDATED INDUSTRIES, INC. pursuant to the provisions of the United States Bankruptcy laws, Title 11, United States Code, or any successor enactment thereto, or in any proceeding under the provisions of any bankruptcy laws of any jurisdiction.* (emphasis added)

The judgment also provides that it shall be governed by the settlement agreement, which states:

3. The parties intend that the Final Judgment with respect to the specific Counts in COOPERS & LYBRAND LIMITED'S Amended Complaint, and the debt set forth in the Final Judgment, be such as to render both non-dischargeable in any proceeding under the provisions of the United States Bankruptcy laws, Title 11, United States Code, or any successor enactment thereto, or in any ·proceeding under the provisions of any bankruptcy or insolvency laws of any jurisdiction. The parties additionally agree that GIBBS, ICD, ICI, DEVINCO, SEAGATE DEVELOPMENT and SEAGATE LAND DEVELOPMENT will not seek a discharge in bankruptcy of the Final Judgment or the debt set forth in the Final Judgment.

On July 7, 1988 Gibbs filed a petition for relief under chapter 7 of the Bankruptcy Code. On October 31, 1988 Coopers & Lybrand filed the complaint commencing this adversary proceeding. Gibbs filed an answer asserting that his debt to Coopers & Lybrand is dischargeable. After a pretrial conference, Coopers & Lybrand filed the subject motion for summary judgment.

### II.

Coopers & Lybrand's memorandum of law in support of its motion asserts that the doctrines of res judicata and/or collateral estoppel require that this Court accept the judgment of the District Court in the prepetition Florida action as conclusive on the issue of nondischargeability under Code § 523. Gibbs' brief in opposition contends that res judicata does not apply in bankruptcy proceedings pursuant to *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Gibbs also argues that before collateral estoppel could be applied, the case of *Matter of Ross,* 602 F.2d 604 (3rd Cir.1979), requires that the Court conduct an evidentiary hearing on that issue. Coopers & Lybrand's reply memorandum reaffirms that it is seeking application of res judicata, but withdraws reliance on collateral estoppel, and hence asserts that a *Ross* hearing is not necessary.

### III.

Any analysis of res judicata or collateral estoppel in bankruptcy cases must begin with *Brown v. Felsen, supra.* In that case, the Supreme Court held that a bankruptcy court may consider evidence extrin-

sic to the judgment and record of a prior state court suit when determining whether a debt reduced to judgment in the state court is dischargeable in bankruptcy, since res judicata does not bar a creditor from offering additional evidence to meet a new defense of bankruptcy asserted by a debtor. The nature and purpose of res judicata were summarized as follows:

> Res judicata ensures the finality of decisions. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 US 147, 153, 59 L Ed 2d 210, 99 S Ct 970 [973] (1979). Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist. v. Baxter State Bank*, 308 US 371, 378, 84 L Ed 329, 60 S Ct 317 [320] (1940); 1B J. Moore, Federal Practice ¶ 0.405[1] (2d ed 1974). Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

442 U.S. at 131, 99 S.Ct. at 2209. However, res judicata must be applied carefully:

> Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry.

*Id.* at 132, 99 S.Ct. at 2209. The Supreme Court noted that considerations material to discharge in bankruptcy are irrelevant to the ordinary collection proceeding, *id.* at 134, 99 S.Ct. at 2211, and a creditor should have the opportunity to meet the new defense of bankruptcy by raising claims of fraud even if they were not raised in a prepetition collection action. The Supreme

Court also noted that under the Bankruptcy Act which preceded the Bankruptcy Code, the bankruptcy courts have exclusive jurisdiction over issues of discharge.[4] *Id.* at 135 and 136, 99 S.Ct. at 2211 and 2211. Thus a state court could not determine such issues.

### A.

■ However, Gibbs' argument that res judicata does not apply at all in bankruptcy cases is not correct. State courts cannot determine bankruptcy issues before bankruptcy jurisdiction arises and as long as the bankruptcy courts retain it, but they can certainly determine state law issues as to which they have jurisdiction. The bankruptcy courts look to state law for the determination of various issues. For example, the amount of a claim typically is determined by state law. *See In re Meyertech Corp.*, 831 F.2d 410, 418 (3rd Cir. 1987). When a state court enters a prepetition judgment as to the amount of a claim in the proper exercise of its jurisdiction, such judgment is res judicata in bankruptcy as to the amount of the claim, although not as to its dischargeable nature. *In re Comer*, 723 F.2d 737 (9th Cir.1984); *see also* 1B J. Moore, *Moore's Federal Practice* ¶ 0.419[3.–6], at 672–673 (3d ed. 1984). It follows that since the District Court in the Florida action had jurisdiction to determine the amount of Coopers & Lybrand's claim against Gibbs, the judgment of the District Court is res judicata as to the amount of the claim. Gibbs admits this in his answer to the complaint in this adversary proceeding.

### B.

■ Although it is clear from *Brown v. Felsen* that a state court cannot determine the dischargeability of a debt in bankruptcy before bankruptcy jurisdiction arises in the bankruptcy court and as long as the bankruptcy court retains it, there are no reported cases on the res judicata effect of

---

**4.** Under 28 U.S.C. § 1334(b), the district courts have original but not exclusive jurisdictions of all civil proceedings arising under, arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 157(a) authorizes the district court to refer all bankruptcy cases and proceedings to the bankruptcy court, which has been done in this district. Determinations of discharge and dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I) and (J).

a judgment of nondischargeability entered by a federal district court before a bankruptcy petition was filed. This case therefore appears to be one of first impression.

It is clear that if a federal district court withdraws the reference of an action to determine dischargeability from a bankruptcy court under 28 U.S.C. § 157(d), the district court has jurisdiction over such an action pursuant to 28 U.S.C. § 1334(b). However, in this case Gibbs had not filed a bankruptcy petition when the judgment was entered. Gibbs argues that bankruptcy jurisdiction does not exist until a bankruptcy petition is filed, and that the District Court in Florida therefore lacked jurisdiction to enter a judgment of nondischargeability.

A bankruptcy case is commenced by the filing of a petition under Bankruptcy Code §§ 301, 302 or 303. "From that beginning follow all of the proceedings, whether called controversies, contested matters, suits, actions or disputes, that will occur in the unfolding of the case under the Bankruptcy Code." 1 Collier on Bankruptcy, ¶ 3.01[c][i], p. 3–20 (L. King 15th ed. 1989). 28 U.S.C. § 1334(a) and (b) vest the district courts with subject matter jurisdiction over all bankruptcy cases and all civil proceedings arising under the Bankruptcy Code, or arising in or related to a bankruptcy case. An action to determine the dischargeability of a debt is a civil proceeding arising under Code § 523. There is no provision in title 28, title 11 or elsewhere in the law which authorizes any federal court to exercise jurisdiction over any proceeding arising under title 11, or over any other bankruptcy issue, until a bankruptcy case is commenced by the filing of a petition.

It might be argued that a district court can enter a declaratory judgment as to a bankruptcy issue such as dischargeability outside of a bankruptcy case under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* However, it is well-established that the Declaratory Judgment Act is limited in operation to those cases which would otherwise be within the jurisdiction of federal courts; the Declaratory Judgment Act does not in itself confer subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Ragoni v. United States,* 424 F.2d 261 (3rd Cir.1970).

Further, a district court has no jurisdiction over a bankruptcy case or proceeding unless such court is the venue for such case or proceeding under 28 U.S.C. §§ 1408, 1409 or 1412. See also Bankruptcy Rule 1014(b). Gibbs filed his bankruptcy petition in the District of New Jersey, not the Southern District of Florida.

█ For all of the foregoing reasons, the United States District Court for the Southern District of Florida lacked subject matter jurisdiction over the issue of whether the judgment or the debt underlying it were dischargeable in bankruptcy, and the judgment is therefore void to the extent that it purported to determine that issue.[5]

## IV.

The issue of the possible application of collateral estoppel still remains. Although Coopers & Lybrand elected to withdraw its reliance on that doctrine when Gibbs asserted that an evidentiary hearing would be required under *Matter of Ross, supra,* the Court has elected *sua sponte* to consider it.[6]

5. It is also noteworthy that the judgment in this case provides that it is nondischargeable not only by Gibbs, but also by five corporate defendants. As to the corporations, such judgment would be unnecessary in chapter 7 because Code § 727(a)(1) bars a corporation from obtaining a discharge under that chapter. In a chapter 11 case, the judgment would appear to violate Code § 1141(d)(1), which provides that confirmation of a plan of reorganization discharges any debt except as provided in § 1141(d), the plan or the order confirming the plan.

6. The Court has authority under Code § 105(a) to raise this issue *sua sponte.* The salutary purposes of res judicata and collateral estoppel include freeing the courts to resolve other disputes. *Brown v. Felsen, supra,* 442 U.S. at 131, 99 S.Ct. at 2209. The parties estimated in their pretrial memoranda that it would take forty hours to conduct a trial on the merits. A review of the pretrial memoranda indicates that those estimates might be conservative. Time available to the court may be saved if collateral estoppel applies. It is therefore perfectly proper to raise the issue *sua sponte,* in the interests of

Although res judicata cannot apply as to the issue of nondischargeability, collateral estoppel might bar relitigation of underlying issues:

This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *Montana v United States,* 440 US 147, 153, 59 L Ed 2d 210, 99 S Ct 970 (1979); *Parklane Hosiery Co. v Shore,* 439 US 322, 326 n 5, 58 L Ed 2d 552, 99 S Ct 645 (1979); *Cromwell v County of Sac,* 94 US 351, 352–353, 24 L Ed 195 (1877). If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment.

*Brown v. Felsen, supra,* 442 U.S. at 139, n. 10, 99 S.Ct. at 2213 n. 10.

### A.

Res judicata is often referred to as claim preclusion, and collateral estoppel as issue preclusion. The Supreme Court distinguished the doctrines as follows in *Parklane Hosiery Co. v. Shore:*

Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually

litigated and necessary to the outcome of the first action.

439 U.S. 322, 326, 99 S.Ct. 645, 649, n. 5, 58 L.Ed.2d 552 (1979)

The "claims" extinguished by res judicata include all rights of the plaintiff to remedies against the defendant with respect to the transaction out of which the suit arose. *Restatement (Second) of Judgments* § 24 comment a (1982); *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983–984 (3rd Cir.1984). The terms "claim" and "cause of action" are essentially synonymous for purposes of res judicata. 1B J. Moore, *Moore's Federal Practice, supra,* ¶ 0.410[1]. By contrast, an "issue" is a single, certain and material point arising out of the allegations and contentions of the parties. *Id.,* ¶ 0.443[2]. Collateral estoppel applies to issues both of fact and law. *Id.,* ¶ 0.442[1]; *Restatement (Second) of Judgments* § 27 comment a (1982). Thus, for example, a judgment finding the presence or absence of fraud can collaterally estop relitigation of the issues of fraud. *Brown v. Felsen, supra,* 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10; *Restatement (Second) of Judgments* § 27 comment a at p. 251 (1982).

The distinction between "issues" and "claims," and hence the distinction between res judicata and collateral estoppel, has become blurred:

The differences between claim preclusion and issue preclusion in many cases may be more fiction than fact. In *Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., Ltd.,* 750 F.2d 267 (3rd Cir.1984), this court recently remarked that the federal common law pertaining to collateral estoppel has been interpreted by the courts so broadly that the doctrine of issue preclusion is "virtually indistinguishable from res judicata." *Id.* at 271 n. 2. An expansive definition of "issue" may be used to encompass any legal theory or factual assertion put forward in a second action that is related to the subject matter and relevant to the issues actually adjudicated in the initial action. *See* J. Moore, J. Lucas & T.

seeing other litigants have their day in court

sooner rather than later.

Currier, 1B *Moore's Federal Practice* ¶ 0.443[2] at 760–61 (3d ed. 1984). *Purter v. Heckler,* 771 F.2d 682, 689–690 n. 5 (3rd Cir.1985). *See also Restatement (Second) of Judgments* § 26 comment a (1982). *Brown v. Felsen* nevertheless requires that the Court make the distinction. However, as the Supreme Court undoubtedly knew when it decided that case, both doctrines will often have the same effect. "While the distinction between res judicata and collateral estoppel is often adverted to in the cases, when issues are litigated in the first action that will be dispositive of the second action, the practical result is the same." 1B. J. Moore, *Moore's Federal Practice, supra,* ¶ 0.410[1] at p. 350, n. 4.

### B.

In *Matter of Ross, supra,* the standards and procedure for applying collateral estoppel to dischargeability issues in the Third Circuit were set forth:

> Contrary to the position of certain commentators, *Brown v. Felsen, supra* at note 10, decided after the July 1978 order subject to this appeal, indicates that the doctrine of collateral estoppel may be applicable to a dischargeability determination by the bankruptcy court. In order for the doctrine to bar relitigation of the dischargeability issue, the bankruptcy court would have to find that:

> "... (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."

*Haize v. Hanover Ins. Co.,* 536 F.2d 576, 579 (3d Cir.1976). See also *Matter of McMillan,* 579 F.2d 289 (3d Cir.1978).

A determination of whether the *Haize* standards are met should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law. [footnotes omitted]

*Id.* at pp. 607 and 608.

■ *Ross* dealt with a judgment after a trial on the merits rather than a consent judgment. However, a consent judgment has the same res judicata and collateral estoppel effect as a judgment entered after trial. *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 96–97 (3rd Cir.), *cert denied sub nom. Trans Tech Inc. v. Interaynamics, Inc.,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). Prepetition consent judgments have resulted in application of collateral estoppel to issues underlying bankruptcy court determinations of nondischargeability in at least three reported decisions from courts of appeals for other circuits.

In *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980), the debtor had consented to entry of prepetition state court judgments finding that he had misapplied funds held in a fiduciary capacity. In a subsequent bankruptcy court action to determine dischargeability under § 17(a)(4) of the Bankruptcy Act, the predecessor to Bankruptcy Code § 523(a)(4), summary judgment was granted that the debts were nondischargeable because they resulted from defalcation in a fiduciary capacity. The summary judgment was affirmed.

In *In re Halpern,* 810 F.2d 1061 (11th Cir.1987), the debtor had consented to entry of a prepetition state court judgment finding that he had made material misrepresentations of fact to the plaintiff bank, that he knew the statements were false when he made them, that he made the misrepresentations with the intent to induce the bank to extend cash and credit to him, and that his actions were for the purpose of fraudulently deceiving the bank. The prepetition judgment further provided that the findings set forth therein would collaterally estop the debtor from denying such facts, and would conclusively establish that the debt is excepted from discharge in bankruptcy. In a subsequent bankruptcy court action to determine dischargeability under Code § 523(a)(2), the bankruptcy court granted summary judg-

ment on the grounds that the facts admitted in the state court judgment contained all of the elements necessary for a determination of nondischargeability under that section. The summary judgment was affirmed.

In *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987), the debtor had consented to entry of a prepetition state court judgment finding that he had breached his fiduciary duty regarding trust funds through misappropriation or defalcation. The judgment further provided that it was the debtor's intention that the debt would not be dischargeable and that the findings may be taken as true and correct without further proof in subsequent proceedings. In a subsequent bankruptcy court action to determine dischargeability, summary judgment was granted on the grounds that the findings in the consent judgment should be given collateral estoppel effect. The summary judgment was affirmed.

In this case, the district court judgment did not set forth specific findings like the judgments in the three cases discussed above, but it did provide that it would be governed by the terms of the settlement agreement. Paragraph 3 of the settlement agreement provided that "The parties intend that the Final Judgment with respect to the specific Counts in COOPERS & LYBRAND LIMITED's Amended Complaint" will be nondischargeable in bankruptcy. That statement might be construed as an admission by Gibbs that the allegations in the amended complaint in the Florida action, as summarized in section I above, are true. If those allegations have been admitted, such admissions might contain all elements necessary for a determination of nondischargeability under Code § 523(a)(2), (4) and/or (6). The hearing called for by *Ross* must therefore be held.

The first question which must be answered under *Ross* is whether the issues sought to be precluded in this adversary proceeding are the same as those involved in the Florida action. This will require a careful comparison of the elements of causes of action under Code § 523(a)(2), (4) and (6) with the allegations in the amended complaint in the Florida action. The standards

in the two actions must be identical for collateral estoppel to apply. *Brown v. Felsen, supra,* 442 U.S. at 139, n. 10, 99 S.Ct. at 2213 n. 10.

The second question is whether the issues in the Florida action were actually litigated. That requirement is satisfied as to findings in a consent judgment if the parties could reasonably have foreseen the conclusive effect of their actions. *Klingman v. Levinson, supra,* 831 F.2d at 1296; *In re Halpern, supra,* 810 F.2d at 1064.

The third question is whether the issues in the Florida action were determined by a valid and final judgment. Gibbs has not argued that the District Court in the Florida action lacked jurisdiction to enter judgment on the causes of action in the amended complaint in that case, or that the judgment is not final or is invalid except to the extent that it purported to determine bankruptcy issues.

The fourth question is whether the determinations in the Florida action were essential to the judgment. Like the requirement that an issue actually be litigated, the central inquiry as to this requirement is different with a consent judgment:

The requirements that issues be actually litigated and necessary to the judgment in order for issue preclusion to apply are altered somewhat in the context of consent decrees. As we stated in *Barber v. International Brotherhood of Boilermakers,* 778 F.2d 750, 757 (11th Cir.1985), "[t]he very purpose of [consent] decrees is to avoid litigation, so the requirement of actual litigation necessary to preclusion always will be missing." Instead, the central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or other evidence. *Id.; Balbirer v. Austin,* 790 F.2d 1524, 1527 (11th Cir.1986).

*In re Halpern, supra,* 810 F.2d at 1064.

The parties' attention must be focused on those questions in preparation for the *Ross* hearing.

## V.

In opposition to the motion for summary judgment, Gibbs offered affidavits from

himself and his attorney in the Florida action essentially to the effect that Gibbs agreed to the language in question in the settlement agreement and judgment, while denying any wrongdoing, only as an expression of his intention not to file a bankruptcy petition and on the basis of advice of counsel that the language in question would not bar discharge of the debt. Coopers & Lybrand moves to strike those affidavits on the grounds that, *inter alia,* they violate the parol evidence rule. Coopers & Lybrand relies on cases for that proposition including *Albright v. R.J. Reynolds Tobacco Co.,* 350 F.Supp. 341 (W.D.Pa.1972), *aff'd.,* 485 F.2d 678 (3rd Cir.1973), *cert denied,* 416 U.S. 951, 94 S.Ct. 1961, 40 L.Ed.2d 301 (1974).

Gibbs has not briefed that issue or the others raised by the motion to strike. The Court will defer decision on that motion pending receipt of a brief from Gibbs on those issues in connection with the *Ross* hearing. It should be noted, however, that although *Ross* requires that the parties have the opportunity to offer evidence at the hearing, it does not require that the court admit such evidence over an objection unless it is admissible under the Federal Rules of Evidence.

## VI.

In conclusion, IT IS ORDERED that the plaintiff's motion for summary judgment on the basis of res judicata is denied. A hearing will be conducted pursuant to *Matter of Ross, supra,* to determine if collateral estoppel applies to bar relitigation of issues admitted in the settlement agreement and consent judgment in the Florida action. Decision will be deferred on the motion to strike Gibbs' affidavits in opposition pending further briefing. The attorneys for the plaintiff are to arrange a conference call within fifteen days with the attorneys for the defendants and the Court to set up an appropriate schedule.