In re Ronald C. CHERIPKA, Sr., and Michele Cheripka, Debtors.

Ronald C. CHERIPKA, Sr., and Michele Cheripka, Plaintiffs,

v.

REPUBLIC INSURANCE COMPANY, Defendant.

Bankruptcy No. 87–03331–JKF.
Motion No. 90–2372–M.

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 20, 1990.

Eileen D. Yacknin, Pittsburgh, Pa., for debtors-plaintiffs.

Frank R. Fleming III, Linda A. Michler, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the Court in this Chapter 7 proceeding is Debtors' (hereinafter, Cheripkas if jointly, Ronald or Michele if individually) Motion for Enforcement of Discharge and to Determine Dischargeability of Debt. Defendant, Republic Insurance Company (hereinafter, Republic), relies upon an Order of Court in Civil Action No. 85–0486, issued April 2, 1986 by the United States District Court for the Western District of Pennsylvania as being determinative. In the alternative, Defendant contends that the debt owed to it is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and/or 523(a)(6), based upon evidence adduced at trial. For the reasons which follow, we hold that the debt to Republic is not dischargeable as to Ronald, but is dischargeable as to Michele.

The Cheripkas are a couple who have experienced severe marital difficulties. Michele lived with another man during part of the marriage, and although she was living in the family home in an effort at reconciliation during the time at issue, bad feelings between the couple remained close to the surface.

On or about August 25, 1984, the Cheripkas attended a wedding at which Ronald consumed a large quantity of alcohol. Afterward, the Cheripkas travelled to an "after-hours" club where both drank alcoholic beverages. Ronald became extremely inebriated, Michele to a lesser extent, and as

the couple left the bar, an argument erupted between them.

Soon after arriving at their home in the early morning hours of August 26, the disagreement passed from angry to vituperative. Michele vented her anger by emptying the contents of their freezer, launching frozen missiles at her husband. For his part, Ronald warned Michele to take the children and whatever else she wanted and leave, because he was going to burn down the house. Although both Cheripkas deny remembering Ronald's threat, the couple's babysitter, who was present during the argument in the home, testified to it.

At this point, Michele took her children and left the house along with the babysitter. Ronald remained at the house for an undetermined amount of time before leaving on foot for his brother's house, taking with him a hunting rifle of apparent value. Ronald himself testified that Michele and the children left the house at approximately 2:45 a.m. and that his cousin called him at his brother's house at approximately 4:00 a.m. and reported that the house was on fire.

The local fire department was summoned, but they were not able to prevent an almost total loss of the house. Fire investigators testified to extensive evidence of arson. There were multiple points of origin; the west side bedroom contained points of origin on opposite walls, while the living room carpet was marked by a circular burn, one foot in diameter. The residue of a hydrocarbon accelerant was detected at various locations and there was testimony that two containers of accelerant were found at the scene; a five gallon can of kerosene was found on its side in the basement and an empty can of charcoal lighter fluid was found in the back yard. One of the fire investigators testified that Michele told him that the can of charcoal lighter had been purchased recently and should have been nearly full. Fire investigators also eliminated potential accidental causes. The electrical wiring at the points of origin was in good condition. The fuel oil furnace and the hot water heater, both located in the cellar, were entirely undamaged. Additionally, the weather on the night of the fire had been clear and cool, negating the possibility of lightning.

Some time after the fire, the Cheripkas were contacted by an independent insurance adjusting company and urged to file a claim with Republic, the insurer of their home. They filed such a claim, but Republic refused to honor it for a variety of reasons, principal among which was Republic's belief that Ronald had burned the house intentionally, in contravention to the terms of the policy. The policy read, *inter alia:*

SECTION I—EXCLUSIONS

We do not cover loss resulting directly or indirectly from: ... 5. *Neglect,* meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

Insurance Policy at 6 (Defendant's Exhibit 1). And:

SECTION I—CONDITIONS

2. *Your Duties After Loss.* In case of a loss to which this insurance may apply, you shall see that the following duties are performed: ...

b. protect the property from further damage, ...

e. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss; ...

Insurance Policy at 6 and Revised Endorsement at Y–22. And:

SECTION I AND SECTION II—CONDITIONS

2. *Concealment or Fraud.*

We do not provide coverage for any *insured* who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

Insurance Policy at 12. Finally, the policy also required Republic to satisfy the mortgage on the house to the third party mortgagee, regardless of the validity of the Cheripka claim:

SECTION I—CONDITIONS

12. *Mortgage Clause.*

... If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, ... If we pay the mortgagee for any loss and deny payment to you: a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage.

Insurance Policy at 8.

Cheripkas brought suit against Republic in the Court of Common Pleas of Allegheny County, Pennsylvania, claiming sums allegedly owed to them under the terms of the insurance policy. Republic removed the claim to the United States District Court for the Western District of Pennsylvania under its diversity jurisdiction. Republic filed its Answer to the Cheripka Complaint on March 7, 1985. Republic's third enumerated defense stated that the company did not owe the Cheripka claim because Ronald had committed arson. Republic's fourth enumerated defense alleged intentional concealment and misrepresentation on the part of Michele. On March 14, 1985, Republic paid Great American Federal Savings and Loan Association, the Cheripkas' mortgagee, $24,350.62. Republic then counterclaimed, seeking to collect from the Cheripkas the amount paid to the mortgagee pursuant to the insurance policy. No money was ever paid directly to the Cheripkas.

The two claims were settled. The settlement terms were memorialized in an Order entered April 2, 1986 by Chief Judge Maurice B. Cohill, Jr., to which the parties, through counsel, consented. Relevant excerpts of that Order are as follows:

3. Pursuant to 11 U.S.C. Sections 523(a)(2) and (a)(6), neither the judgment in favor of Republic and against Cheripka nor any obligation of Cheripka to Republic created by this order shall be dis-chargeable in bankruptcy pursuant to 11 U.S.C. Sections 523(a)(2) and (a)(6).

4. Republic may offer a certified copy of this order in any bankruptcy proceeding filed by Cheripka or either of them as conclusive evidence of the nondischargeability of the obligations of Cheripka or either of them to Republic.

Order, Civil Action No. 85–0486 at 1–2.

On December 7, 1987, the Cheripkas filed this bankruptcy.

The first issue which must be resolved is whether the Order of our District Court is binding upon this Court either as a determination of dischargeability or, under principles of collateral estoppel, as a prior adjudication which prevents us from evaluating the evidence of dischargeability and ruling on that issue.

This case puts this Court in the unusual position of having to review and analyze an Order entered by the District Court, a court superior to our own. We have no doubt that Republic and the Cheripkas, who were each represented by counsel, negotiated the waiver of discharge as well as the clause providing that the Order could be offered as conclusive evidence of nondischargeability. We also believe that both parties felt that the provisions of the Order were in their respective best interests. Consequently, we are hesitant to say that an Order which approved that bargain cannot be binding in the very proceeding for which its use was intended. Nonetheless, our examination of the Bankruptcy Code and extensive case law convinces us that the Order was ineffective in determining the dischargeability of the Cheripka debt on the following grounds:

■ (1) The "jurisdiction" analysis— Bankruptcy jurisdiction does not exist until the filing of a bankruptcy petition. The District Court lacked subject matter jurisdiction to enter judgment on the issue of nondischargeability where no bankruptcy case had been filed. "There is no provision in title 28, title 11 or elsewhere in the law which authorizes any federal court to exercise jurisdiction over any proceeding arising under title 11, or over any other bankruptcy issue, until a bankruptcy case is

commenced by the filing of a petition." *In Re Gibbs*, 107 B.R. 492, 497 (Bankr.D.N.J. 1989).

(2) The "reaffirmation" analysis—"A contractual waiver of the dischargeability of a particular debt should be governed by the requirements of section 524(c) and (d) which control the validity of reaffirmation agreements." *Matter of Ethridge*, 80 B.R. 581, 585 (Bankr.M.D.Ga.1987). Like the Order at issue, the judgment in *Ethridge* was entered by consent. Like that in *Ethridge*, this Order does not meet the strictures of 11 U.S.C. § 524(c).

(3) The "waiver" analysis—We present this discussion only because Republic argued that 11 U.S.C. § 727 as well as § 523(a)(2) and (6) applied in this case. We point out that § 727 does not apply because the pleadings raise only a question of dischargeability of an individual debt, not the discharge of the debtor altogether. However, even if § 727 did apply, the District Court's Order would not work a waiver of discharge. Pursuant to 11 U.S.C. § 727(a)(10), there are four requirements for an effective waiver of discharge: 1) it must be approved by the court, 2) it must be in writing, 3) it must be signed by the debtor, and 4) it must be given after the order for relief (post-petition). *See also In Re Levinson*, 58 B.R. 831 (Bankr.N.D.Ill. 1986), *aff'd sub nom. Klingman v. Levinson*, 66 B.R. 548 (N.D.Ill.1986), *aff'd* 831 F.2d 1292 (7th Cir.1987). In the instant case, the third element may or may not be satisfied (the Order, which would constitute the waiver, was signed by the Cheripkas' counsel, but not by them). However, the Order was entered pre-petition. Thus, the fourth element clearly is not satisfied and the Order of the District Court cannot work a waiver of discharge.

■ We further are constrained to find that collateral estoppel does not preclude the relitigation of the issue of dischargeability by the terms of the Order of the District Court. Collateral estoppel, or issue preclusion as it is sometimes called, has four required elements:

(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*Matter of Ross*, 602 F.2d 604, 608 (3d Cir. 1979), quoting *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976). The issue is whether this Court can use the District Court Order for the purpose for which it obviously was intended. The Order contains no findings of fact, but only the conclusory language that the debt recited in the Order would be nondischargeable. Without specific findings of fact, we cannot be sure what actually was litigated; we cannot say, for instance, that the issue of fraud was determined, without specific findings that comprise the elements of fraud. Although the Order contained language which purported to declare the debt nondischargeable for fraud ("Pursuant to 11 U.S.C. Sections 523(a)(2) ..."), we cannot say this for certain. Case law supports this proposition:

> ·... the federal courts have logically required a specific finding of fact in the stipulated final judgment as to all elements related to the proof of nondischargeability. (citations omitted) ... Further, the stipulated judgment between the Plaintiff and Defendant herein does not recite findings of fact and conclusions of law that clearly establish all elements of fraud under Section 523(a)(2).

*Matter of Daniels*, 91 B.R. 981, 985 (Bankr. M.D.Fla.1988). *See also Matter of Ethridge, supra. Cf., In Re Halpern*, 810 F.2d 1061 (11th Cir.1987) (requiring specific findings, but determining that those in *Halpern* were sufficient and applying collateral estoppel). Moreover, precise findings may not be imputed to the stipulated judgment based upon detailed allegations contained in the pleadings. *See Matter of Allman*, 735 F.2d 863 (5th Cir.1984).[1]

---

1. These cases all involved prior state court judgments rather than one of a federal court. Our

analysis does not change, however, so long as the prior District Court Order was not issued

Furthermore, the issue of nondischargeability of the obligation cannot have been "essential" to the prior judgment, which established the amount due and owing by the Cheripkas to Republic, and provided a payment schedule.

■ Inasmuch as we are precluded from conclusive reliance upon the Order of the District Court, we must determine dischargeability based upon the evidence adduced at trial and the reasonable inferences therefrom. While the parties agree that Republic's burden of proof under 11 U.S.C. § 523(a)(2) is by clear and convincing evidence, they are in dispute as to what standard of proof applies under § 523(a)(6). In line with *In Re Braen*, 900 F.2d 621 (3d Cir.1990), we find that the appropriate standard of proof under § 523(a)(6) is a preponderance of evidence.

■ As to Republic's claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A), we hold that even if the Cheripkas committed arson and misrepresented that fact to Republic, their debt to Republic would remain dischargeable, because of the failure of Republic to demonstrate reliance upon the misrepresentation. Reliance is a necessary element of any § 523(a)(2)(A) exception. *See In Re Singleton*, 37 B.R. 787 (Bankr.Nev.1984).

In fact, the District Court pleadings themselves, of which we take judicial notice, establish that Republic could not have relied upon the truthfulness of the Cheripkas' claims. Republic paid Cheripkas' mortgagee a week after filing an Answer in which Republic alleged both arson and misrepresentation after the fact on the part of the Cheripkas. The debt which Republic is seeking to preserve is one which occurred independently of any misrepresentation and was not incurred due to reliance upon false assertions. Republic was contractually bound to pay the Cheripkas' mortgagee regardless of the actual cause of the fire and the Cheripkas' statements in connection with it. Thus, the reliance required to prove nondischargeability under § 523(a)(2) has not been established.

■ However, should we find that the Cheripkas intentionally fired their home, then their debt to Republic under 11 U.S.C. § 523(a)(6) would be nondischargeable. In that event, the Cheripkas would have caused a willful and malicious injury to property in which Republic, as assignee and/or subrogee of the original mortgagee, had a security interest. The Cheripka house was the collateral for the mortgage, and thus, for purposes of § 523(a)(6), was "property of another" which was injured when the house was destroyed by fire.

For the reasons which follow, we find that Ronald did, indeed, intentionally burn down his house. Therefore, the debt to Republic as to him will not be discharged. However, there was no allegation or evidence that Michele participated in any way in this act. Because there is no allegation of wrongdoing on the part of Michele under § 523(a)(6), and because we have already dismissed the possibility of nondischargeability under § 523(a)(2), the debt will be discharged as to her.

Independent investigators testified that the cause of the fire was arson. Indeed, multiple points of origin, the presence of accelerant residue and empty accelerant containers, as well as the other factors discussed earlier in this opinion, all indicate arson by clear and convincing evidence. Having reached this conclusion, the issue becomes who set the fire. First, we have the testimony of a disinterested party that Ronald threatened to burn down the house immediately before it was actually and intentionally fired by someone. Ronald was the last person known to be at the house.

Moreover, the evidence established the unlikelihood that anyone else could have committed the arson. The house was located in a secluded area inaccessible to strangers. It was vacant from only 3:00 a.m. to 4:00 a.m. on the night of the conflagration, and only after Michele left the house with

while the Court sat as a bankruptcy court. Of course, in this case, the District Court was not acting as a bankruptcy court, because no bankruptcy case had been instituted. *See In Re Berg-* *man* 103 B.R. 660 (Bankr.E.D.Pa.1989). Here, the case was in the District Court by virtue of its removal after an action was commenced in the state court.

her children and babysitter upon Ronald's warning. The Cheripkas presented no evidence of the existence of any person with a motive to commit the arson, and the possibility of a transient vandal happening along at the moment of opportunity is too remote to be a reasonable inference. In light of the testimony, which we credit, that Ronald threatened to set fire to the house, his opportunity to do so, his insistence that the family leave the home, his act in taking with him a valuable rifle, the proximity in time from when he left the house to when the fire was discovered, the suspicious location and nature of the fire, the only reasonable conclusion to be drawn from the facts adduced is that Ronald burned down his house. The evidence of this is not only preponderant, it rises to the level of clear and convincing and renders moot the Cheripka argument about the appropriate standard of proof.

Cheripkas argue that Ronald's intoxication vitiated the intent component of § 523(a)(6), citing as authority *Cassidy v. Minihan,* 794 F.2d 340 (8th Cir.1986), and *In Re Compos,* 768 F.2d 1155 (10th Cir. 1985). Both of these cases involved injuries arising out of drunk driving accidents and in both instances the court ruled that the burden of establishing nondischargeability under § 523(a)(6) was not met because intent to injure was not shown, but merely reckless disregard. These cases are distinguishable from the instant case because the intent of the individuals involved in the drunk driving cases was the intent to operate a vehicle, not the intent to injure. Here, the specific, expressed intent of Ronald was to commit arson. The situation might be analogous to the drunk driving cases if, for example, Ronald attempted to light a charcoal grill while drunk and then accidentally burned down the house. There the intent would have been to cook food and the unfortunate result merely the happenstance of reckless disregard. On the facts of this case, however, the analogy to the drunk driving cases is misapplied. Pursuant to 11 U.S.C. § 523(a)(6), Ronald's debt to Republic is not dischargeable and will not be discharged.

An appropriate Order will be entered.

## ORDER

AND NOW, to-wit, this 20th day of December, 1990, for the reasons set forth in the foregoing Memorandum Opinion, in consideration of the Motion for Enforcement of Discharge and to Determine Dischargeability of Debt, it is ORDERED, ADJUDGED, and DECREED that the debt owed by Ronald and Michele Cheripka to the Defendant, Republic Insurance Company, is not discharged as to Ronald Cheripka and Ronald Cheripka remains liable for it. The debt is discharged as to Michele Cheripka.