In re Michael L. HIMOWITZ, Debtor.

**PENN–AMERICA INSURANCE CO., Plaintiff,**

v.

**Michael L. HIMOWITZ, Defendant.**

Bankruptcy No. 92–32260.
Adv. No. 92–3413/TS.

United States Bankruptcy Court,
D. New Jersey.

Dec. 15, 1993.

**110**

Richard I. Ostrager, Ostrager, Fieldman, Zucker, Kachmar & Nirenberg, Hackensack, NJ, for plaintiff.

James B. Brown, Jr., Shore & Zahn, East Brunswick, NJ, for defendant.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This memorandum opinion comprises the court's decision on a motion for summary judgment filed by plaintiff-creditor Penn–America Insurance Company ("Penn–America"). Penn–America is seeking summary judgment to have a debt of Michael L. Himowitz ("debtor" or "Himowitz") declared nondischargeable in bankruptcy under section 523(a)(4) of title 11, United States Code (the "Bankruptcy Code" or "Code"). This court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The plaintiff's motion is denied for the reasons which follow.

*FACTS AND PROCEDURAL HISTORY*

Penn–America's motion for summary judgment was filed under Fed.R.Bankr.P. 7056, which makes Fed.R.Civ.P. 56 applicable in adversary proceedings. Penn–America's motion contends that the doctrine of collateral estoppel (issue preclusion) compels this court to hold that a finding of fraud or defalcation in a fiduciary capacity which is set forth in a prior judgment of the United States District Court for the District of New Jersey is dispositive of those issues in this adversary proceeding. Plaintiff further asserts that once collateral estoppel is applied, it is entitled to summary judgment. The facts are as follows.

Plaintiff Penn–America is a Pennsylvania insurance company that is approved by the New Jersey Insurance Department as an excess and surplus lines insurance carrier. Penn–America entered into an agency contract with Executive Excess Ltd. ("EEL") on April 22, 1988 which granted EEL the authority to bind Penn–America to insurance contracts covering risks located in the State of New Jersey. The agency contract further provided that EEL collect insurance premiums on behalf of Penn–America and retain commissions out of the amounts collected. Moreover, Himowitz executed a personal guarantee of EEL's obligations under the agency agreement.

On December 27, 1989 EEL commenced an action in the District Court alleging essentially that Penn–America failed to remit unearned premiums and, therefore, breached the agency agreement between the parties, was unjustly enriched, and was guilty of conversion. Penn–America counterclaimed that EEL failed to pay the monthly account current as required in the agency agreement and was therefore guilty of conversion and was unjustly enriched. Penn–America also initiated a third party complaint against Himowitz on his personal guarantee of EEL's obligations.

On October 1, 1990 the U.S. District Court for the District of New Jersey entered an order granting partial summary judgment in favor of defendant/third party plaintiff Penn–America dismissing EEL's complaint and entering judgment in the amount of $282,119.42 in favor of Penn–America and against EEL on the first, second and third counts of Penn–America's counterclaim that EEL failed to pay the monthly account current as required in the Agency Agreement, had wrongfully converted and diverted funds and was unjustly enriched. The District Court also granted summary judgment in favor of Penn–America on the third party complaint, finding Himowitz personally liable for the same amount pursuant to his guarantee of the agency agreement.

On December 17, 1990, the District Court entered another order determining that the October 1, 1990 order for partial summary judgment is a final judgment pursuant to Fed.R.Civ.P. 54(b). This second order states that the District Court had determined that EEL and Himowitz incurred the subject debt by fraud or defalcation while acting in a fiduciary capacity, although that finding was not stated in the October 1, 1990 order for partial summary judgment. The order of December 17, 1990 states in pertinent part:

"... it appearing that an Order for partial Summary Judgment was entered on October 3, 1990 for a sum certain ($282,119.42) in favor of Defendant/Third party Plaintiff, Penn–America Insurance Company, *and the court having determined that Executive Excess Ltd., and Third Party Defendant, Michael L. Himowitz, incurred this debt by fraud or defalcation while acting in a fiduciary capacity,* and the Court having further expressly determined that there is no just reason for delay in the entry of Final Judgment, and for good cause having been shown IT IS, on this 17th day of December, 1990, ORDERED, ADJUDGED and DECREED as follows:

1. That the order entered on October 3, 1990, for partial Summary Judgment in the amount of $282,119.42, in favor of Penn–America Insurance Company, and against Plaintiff, Executive Excess Ltd., is a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure;

2. That the Order entered on October 3, 1990, for Partial Summary Judgment in the amount of $282,119.42 in favor of Defendant/Third Party Plaintiff, Penn–America Insurance Company against Third-par-

ty Defendant is a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; ..." (emphasis added)

On March 9, 1992, on motion by Penn–America, the District Court entered default judgment against Himowitz in the amount of $614,606.86. The default judgment included the $292,119.42 amount of the partial summary judgment, which had been litigated by Himowitz.

Himowitz then filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 9, 1992. Penn–America then filed a complaint on August 7, 1993 to determine the dischargeability of the above debt under Code sections 523(a)(2), (4) and/or (6). Penn–America argues on this motion that the orders granting partial summary judgment and determining such judgment to be final collaterally estop relitigation of the fraud issue in this adversary proceeding and compel this court to hold that the debt is therefore nondischargeable.

### CONCLUSIONS OF LAW

 The doctrine of claim preclusion or res judicata cannot prevent the bankruptcy court from exercising its own judgment to determine if a debt is dischargeable. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The doctrine of issue preclusion or collateral estoppel can, however, be applied in proceedings under Code section 523(a) to prevent relitigation of issues which have previously been determined by a court of competent jurisdiction. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court of Appeals for the Third Circuit has held that:

In order for the doctrine [of issue preclusion] to bar relitigation of the dischargeability issue, the bankruptcy court would have to find that:

"... (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgement."

*Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976). *See also Matter of McMillan*, 579 F.2d 289 (3d Cir.1978). *Matter of Ross*, 602 F.2d 604, 608 (3d Cir. 1979). To make those findings the bankruptcy court must review the record of the prior case and conduct a hearing:

A determination of whether the *Haize* standards are met should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law.

*Id.* This procedure is required even if the prior judgment was entered by a federal court. *In re Graham*, 973 F.2d 1089 (3d Cir.1992); *In re Gibbs*, 107 B.R. 492 (Bankr. D.N.J.1989); *Cheripka v. Republic Insurance Co. (In re Cheripka)*, 122 B.R. 33, 37 n. 1 (Bankr.W.D.Pa.1990), *aff'd without opinion*, D.C.Civ. No. 91–00318 (W.D.Pa.), *aff'd*, No. 91–3249, 1991 WL 276289 (3d Cir. Dec. 31, 1991) (panel decision), *vacated & reh'g en banc granted* (3d Cir. Jan. 22, 1992), *aff'd without opinion*, No. 91–3249 (3d Cir. Feb. 24, 1992).

In this case, the District Court's order of December 17, 1990 stated that the court had determined that Himowitz had incurred the debt of $282,119.42 to Penn–America "by fraud or defalcation while acting in a fiduciary capacity." Those are the exact words used by Code section 523(a)(4) for one type of debt which is nondischargeable. As *Ross* states, however, the court must make a careful review of the record of the prior case. This court cannot merely accept the stated legal conclusions of the prior court at face value. This court must determine whether the four *Ross* requirements have been met.

 A review of the items which have not been provided to this court from the record in the District Court discloses why this court does not have enough information to make the findings required by *Ross* to apply issue preclusion:

1. No transcript has been provided of the October 1, 1990 hearing in the District Court, nor has any other evidence been provided as

to what facts the District Court found which caused it to enter the judgment.

2. No copy has been provided of the application for the December 17, 1990 order, nor has any explanation been provided as to why that order added the statement that the court had found fraud or defalcation in a fiduciary capacity when no such finding was stated in the October 1, 1990 order.

3. The third party complaint against the debtor in the District Court case had only one count, on his guarantee of EEL's debt to Penn–America. No explanation is offered as to how the determination of fraud or defalcation was essential to entry of judgment on the guarantee, a determination required by *Ross.*

 Even assuming, however, that such evidence had been provided, this court is obligated by *Ross* to make its own determination as to whether the facts which were determined by the District Court add up to fraud or defalcation in a fiduciary capacity *within the meaning of Code section 523(a)(4)*. If the bankruptcy court is obligated to accept such statements by other courts of their legal conclusions at face value, the distinction between claim preclusion and issue preclusion will be obliterated and the bankruptcy court will not be exercising its own judgment as to the ultimate issue of dischargeability. *See In re Graham,* 973 F.2d at 1095–1096. Reflection upon the distinctions between basic facts, inferred facts, and ultimate facts is helpful for these purposes. Basic facts are the historical and narrative events. Inferred factual conclusions are drawn from basic facts based on logic and human experience. By contrast, an ultimate fact includes a conclusion of law or at least a determination of a mixed question of law and fact, e.g., the defendant committed fraud. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). While it is true that the "issue" determined for purposes of issue preclusion can be an issue of law, *Gibbs,* 107 B.R. at 498, the party seeking to apply issue preclusion to a legal conclusion such as fraud must at a minimum prove that the elements of such a cause of action under the law followed by the prior court are the same elements used under Code section 523(a) for a cause of action with the same name, as there are sometimes differences. No such proof has been offered here.

 Lastly, it should be noted as a matter of comity that where the court which entered the prior judgment is a higher federal court, the bankruptcy court is placed in an awkward position when reviewing the prior proceedings. It should be noted that such review does not warrant any opinion by the bankruptcy court regarding the correctness of the district court's decision or the propriety of its proceedings. Rather, the bankruptcy court's review is limited exclusively to determination of the question of whether the issues determined by the prior court compel a legal conclusion by this court as to dischargeability of a debt. The bankruptcy court has been vested with exclusive jurisdiction to determine that ultimate issue under the Supreme Court and Third Circuit decisions cited above.

For these reasons, the motion is denied. The Court Clerk shall prepare and enter Standard Order 17.