KRAVITCH, Circuit Judge:
 

 Adjudications in the United States Bankruptcy Courts have often presented questions of how to reconcile the court’s exclusive jurisdiction responsibilities with res ju-dicata principles. The issue in this appeal involves a bankruptcy court’s application of collateral estoppel to a state court consent judgment. Appellant/debtor Howard I. Halpern contends that the bankruptcy court and the United States District Court erroneously concluded that Halpern was precluded by collateral estoppel from relit-igating the factual determinations made by the state court. We agree with the district court that the bankruptcy court properly applied collateral estoppel to the facts of this case and AFFIRM the district court’s judgment of nondischargeability.
 

 In 1973, appellee First Georgia Bank (First Georgia) filed suit against Halpern in Georgia state court. Although the suit was initially for “money had and received,” First Georgia amended its complaint in 1976 to increase the amount of the alleged debt and to alter the complaint to allege that Halpern, as chief executive officer and principal shareholder of American Food Purveyors, Inc. (AFP), engaged in a check kiting scheme in 1972 and 1973 designed to defraud First Georgia. In November 1982, First Georgia again amended its complaint to reduce the alleged debt to reflect a payment by Halpern and to add claims for punitive damages, accounting costs and attorney fees, based upon an allegation that Halpern’s acts were “willful and wanton and in gross disregard of the rights of First Georgia.”
 

 On May 15,1983, the parties entered into a consent judgment in the state court action. The consent judgment found Halpern liable to First Georgia for the sum of $337,-000.00 plus costs. The judgment provided, however, that if Halpern complied with the specified payment schedule, the judgment would be satisfied by total payments in the amount of $250,000.00. If Halpern failed to meet the payment schedule, First Georgia would be entitled to a writ of fieri facias in the amount of $337,000.00.
 
 [1]
 

 As a part of the consent judgment, Hal-pern admitted certain facts. The factual findings included: that Halpern made material misrepresentations of fact to First Georgia; that Halpern knew the statements were false at the time they were made; and that Halpern made the misrepresentations with the intent to induce reliance by First Georgia in extending cash, bank obligations and deposit credits to Hal-pern. Halpern admitted that this conduct was “wilful, malicious, and intentional and designed solely for the purpose of fraudulently deceiving First Georgia Bank.” Moreover, Halpern agreed that:
 

 [Tjhese Findings of Fact and Conclusions of Law will collaterally estop [Halpern] from denying any of the facts or law established herein. Specifically, [Hal-pern] recognizes that these Findings of Fact and Conclusions of Law will conclusively establish that the liability which he is adjudged in this civil action to owe to [First Georgia] will be excepted from discharge in any bankruptcy case in which he is a debtor. This is because ... Hal-pern’s liability to [First Georgia] is (a) for obtaining money or property by false pretenses, false representations, and actual fraud, (b) for fraud or defalcation while acting in a fiduciary capacity, and (c) for wilful and malicious injury by the Defendant Halpern to Plaintiff’s property-
 

 Halpern also agreed that the debt discussed in the judgment had not been discharged in bankruptcy and that Halpern “does not intend to seek a discharge as to
 
 *1063
 
 this Judgment. Both Halpern and his attorney witnessed and signed the consent judgment.
 

 Soon after Halpern filed a Chapter VII bankruptcy petition in July 1984, appellee brought this action in the United States Bankruptcy Court to determine that Hal-pem’s debts to First Georgia are nondis-chargeable under 11 U.S.C. § 523(a)(2), 523(a)(4), and 523(a)(6).
 
 [2]
 
 After a pre-trial hearing, First Georgia moved for summary judgment alleging that Halpern is collaterally estopped by the state court consent judgment from relitigating the facts that form the basis for First Georgia’s claim that the debts are nondischargeable. Thus, according to First Georgia, no material facts were in dispute and First Georgia was entitled to a judgment of nondis-chargeability because Halpern’s debts were incurred by fraud.
 

 The bankruptcy court granted the motion for summary judgment and entered an order declaring Halpern’s debt to First Georgia nondischargeable. 50 B.R. 260. The court reasoned that, despite the fact that bankruptcy courts have exclusive jurisdiction to determine when debts are dis-chargeable, bankruptcy courts may invoke collateral estoppel to preclude relitigation of facts actually and necessarily litigated in a state court action. The court found that applying collateral estoppel is appropriate in this case because: (1) the state court findings of fact were detailed and carefully drawn; (2) Halpern and his attorney voluntarily agreed to the judgment; (3) there is no reason to believe that Halpern’s interest in the direction and outcome of the state court litigation was less than his interest in the dischargeability proceeding; and (4) Halpern did not deny the factual findings in the consent judgment and he presented no additional evidence indicating that the factual findings should not be given their clear meaning. The bankruptcy court concluded that the facts admitted in the state court judgment contained all of the elements necessary for a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A),
 
 [3]
 
 and that Halpern had made no opposing showing.
 

 After the bankruptcy court denied Hal-pern’s motion to alter or amend the judgment, Halpern appealed to the United States District Court. The district court, in a one-page order, agreed with the reasoning of the bankruptcy judge and affirmed the bankruptcy court’s decision.
 

 In this appeal, Halpern contends that the bankruptcy court abdicated its exclusive jurisdiction responsibilities by affording preclusive effect to the state court’s factual findings. Appellant misconstrues the bankruptcy court’s decision as utilizing collateral estoppel to determine the ultimate question of dischargeability. The bankruptcy court did not apply claim preclusion to the dischargeability proceed
 
 *1064
 
 ing.
 
 See generally Brown v. Felsen,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Rather, the bankruptcy court utilized issue preclusion to reach conclusions about facts that the court would then consider as “evidence of nondischargeability.” Applying collateral estoppel in such a manner was expressly approved by the former Fifth Circuit
 
 [4]
 
 in
 
 Carey Lumber Co. v. Bell,
 
 615 F.2d 370, 377 (5th Cir.1980), in which the court found that:
 

 The bankruptcy judge here was presented with state court consent judgments as part of a motion for summary judgment on the claim of nondischargeability.... The judgments contained rather detailed recitations of the findings upon which they were based, findings which closely paralleled the language of ... the Bankruptcy Act. The bankruptcy judge quite properly considered these judgments as evidence in connection with the motion for summary judgment.
 

 [[Image here]]
 

 The bankruptcy court was correct in determining that no issue of fact existed as to the recitations in the state court judgments. It therefore properly accepted these recitations as true, and correctly found that they required the legal conclusion that the debt owed ... was non-dischargeable in bankruptcy.
 

 The bankruptcy court in the instant case therefore correctly concluded that collateral estoppel may be applied to foreclose relitigation of certain facts in a discharge-ability proceeding.
 

 We also conclude that collateral es-toppel was properly applied in this case. Three elements must be present in order for issue preclusion to be proper:
 

 (1) the issue at stake must be identical to the one involved in the prior litigation;
 

 (2) the issue must have been actually litigated in the prior litigation; and
 

 (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.
 

 In re Held,
 
 734 F.2d 628, 629 (11th Cir. 1984). Halpern argues that the issues in the section 523 dischargeability are not identical to issues of fraud under Georgia law in that “reckless disregard” is sufficient for a finding of fraudulent intent under Georgia law but insufficient to establish nondischargeability under section 523. As we indicated above, however, the “issues at stake” in this case were the detailed factual findings in the state court consent judgment. The conclusion that these undisputable facts were sufficient to satisfy section 523(a)(2)(A) was a legal conclusion made by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability. As such, there is no problem of identity of issues in this case.
 

 The requirements that issues be actually litigated and necessary to the judgment in order for issue preclusion to apply are altered somewhat in the context of consent decrees. As we stated in
 
 Barber v. International Brotherhood of Boilermakers,
 
 778 F.2d 750, 757 (11th Cir.1985), “[t]he very purpose of [consent] decrees is to avoid litigation, so the requirement of actual litigation necessary to preclusion always will be missing.” Instead, the central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or other evidence.
 
 Id.; Balbirer v. Austin,
 
 790 F.2d 1524, 1527 (11th Cir.1986).
 

 We agree with the bankruptcy court and the district court that here the parties intended that the consent judgment operate as a final adjudication of the factual issues contained therein. The factual findings in the consent judgment are sufficiently detailed to leave little doubt as to their meaning. Halpern in effect concedes as much in failing to suggest that the findings had some meaning other than that suggested by the clear meaning of the language.
 
 *1065
 
 Any contrary construction is refuted by the fact that Halpern expressly consented in the judgment that “these Findings of Fact and Conclusions of Law will collaterally estop [Halpern] from denying any of the facts or law established herein.” Moreover, the consent judgment on its face evinces that Halpern received consideration in exchange for agreeing that the judgment would constitute a final adjudication of the findings.
 
 [5]
 
 There is no evidence of coercion or duress, and the consent judgment was signed by both Halpern and by his attorney. Under such circumstances, the bankruptcy court correctly concluded that “[a] chilling effect on consent judgments and settlements might result if the court were to ignore such a clear and unambiguous expression of the parties’ intent.”
 

 Halpern argues that our decision in
 
 Balbirer v. Austin,
 
 790 F.2d 1524 (11th Cir.1986), requires a contrary conclusion. In
 
 Balbirer,
 
 Austin sold his controlling shareholder interests in Austin’s Rack, Inc. to B.J. Apparel Corp. The sales contract contained a warranty that all financial reports reflected the actual financial position of Austin’s Rack. Austin also signed an employment agreement with B.J. under which Austin was to be employed by Austin’s Rack conditioned upon Austin’s not breaching any conditions of the sales contract or participating in any conduct that might threaten the reputation or welfare of Austin’s Rack. Later, the relationship between B.J. and Austin deteriorated when B.J. discovered that Austin allegedly overstated the net worth of Austin’s Rack and that Austin made false accusations regarding B.J. to one of BJ.’s primary creditors. Austin’s Rack terminated Austin’s employment and filed suit in Illinois state court against Austin for breach of employment contract. No discovery was held and the only issue actually litigated was personal jurisdiction. A few weeks later, Austin filed suit in Florida state court against Austin’s Rack seeking damages for breach of contract. After discovery and a full trial, the Florida action resulted in a judgment for Austin. While an appeal of the Florida judgment was pending, Austin’s Rack consented to a dismissal of the Illinois action. The Illinois court, allegedly contrary to the intentions of Austin’s Rack, entered a judgment dismissing the action with, rather than without, prejudice. The Florida judgment was reversed on appeal and the Florida District Court of Appeals entered judgment in favor of Austin’s Rack.
 

 After Austin filed a voluntary petition for bankruptcy, B.J. brought complaints to determine dischargeability of the damages allegedly arising from Austin’s misrepresentations. The bankruptcy court held that the Illinois consent decree collaterally estopped B.J. from pursuing its claims of relief against Austin. On appeal, this court held that, although collateral estoppel may properly be applied by a bankruptcy court, the bankruptcy court in
 
 Balbirer
 
 had “considered only the Illinois judgment on its face and did not inquire into the intent of the parties.”
 
 Id.
 
 at 1528. As a result, the court remanded the case to the bankruptcy court to determine what issues, if any, were intended to be resolved by the Illinois judgment and whether any conflict existed between the Florida and Illinois judgments.
 

 The Illinois judgment in
 
 Balbirer
 
 is distinguishable from the state court judgment in this case. First, the consent judgment in this case contains detailed factual findings that are directly relevant to the legal issues presented. The clause in which Halpern agreed that the consent judgment would collaterally estop him from relitigating the findings indicates that the factual findings were included to avoid any later dispute as to the issues intended to be resolved by the judgment. In contrast, the judgment in
 
 Balbirer
 
 did not contain explicit factual findings nor any clause indicating that the judgment was intended to be a final adjudication of cer
 
 *1066
 
 tain issues. Second, factual circumstances surrounding the judgment in
 
 Balbirer
 
 created serious doubt as to the intended effect of the Illinois judgment. Litigation between the parties involving substantially similar issues had progressed much further in the Florida courts. In addition, Austin’s Rack presented evidence supporting the quite probable position that it intended to pursue the litigation in Florida and did not intend the Illinois dismissal to have
 
 any
 
 preclusive effect. In this case, Halpern failed to deny any of the factual conclusions in the consent judgment or present any extrinsic evidence indicating that the judgment was not intended to be a final resolution of the issues.
 
 [6]
 
 We find, therefore, that
 
 Balbirer
 
 is distinguishable from this case.
 

 The judgment of the district court is AFFIRMED.
 

 [1]
 

 .
 
 First Georgia Bank v. Halpern,
 
 No. 453152 (State Ct. Fulton Cty. Ga. March 15, 1983).
 

 [2]
 

 . 11 U.S.C. § 523(a) provides in pertinent part that:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (2) for obtaining money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition;
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s or an insider’s financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 

 (iv)that the debtor caused to be made or published with intent to deceive;
 

 [[Image here]]
 

 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, ...
 

 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....
 

 [3]
 

 .
 
 See supra
 
 note 2. Because the court concluded that the requirements for nondischargeability under § 523(a)(2)(A) were satisfied, the bankruptcy court did not reach the issues of whether the facts admitted in the consent judgment also satisfied the requirements for nondischargeability under § 523(a)(4) and § 523(a)(6).
 

 [4]
 

 . The Eleventh Circuit, in the en banc decision
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.
 

 [5]
 

 . This consideration consisted of First Georgia’s agreement to accept $250,000.00 in full satisfaction of Halpern’s $337,000.00 debt if Halpern met the payment schedule.
 

 [6]
 

 . Halpern’s suggestion that his failure to present any extrinsic evidence was due only to his understanding that the dischargeability issues would be heard separately from the summary judgment motion is untenable. First Georgia’s motion for summary judgment clearly seeks a judgment on the dischargeability claim. Even if the motion were viewed somehow as limited to determining whether issue preclusion should be applied to the consent judgment, however, any evidence Halpern had that indicated that preclusion should not apply should have been presented.