In re John R. **REYNOLDS** and Sandra L. **Reynolds**, Debtors.

Charles R. **JAMESON** and Carol E. **Jameson**, Plaintiffs,

v.

John R. **REYNOLDS** and Sandra L. **Reynolds**, Defendants.

Bankruptcy No. 89–50260–5P7.
Adv. No. 89–21.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 19, 1990.

Michael G. Tanner, Jacksonville, Fla., for plaintiffs.

Richard A. Perry, Ocala, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is pending on complaint suggesting that judgment of a Maryland state court is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4), and (6). A trial was held on July 3, 1990, and upon the evidence presented the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

Plaintiffs, while attending an Annapolis, Maryland, boat show in October, 1986, examined a 32′ Senator Yacht being sold by Fort McHenry Yacht Sales, Inc. ("Fort McHenry"). Fort McHenry was the distributor of Senator yachts. Defendants were the officers, directors and sole shareholders of Senator Yachts, Inc.

Plaintiffs entered into an agreement to purchase a Senator yacht from Fort McHenry. The terms provided that plaintiffs would receive a trade-in credit of $20,-000 for their 26′ Sea Ray Sundancer boat ("Sea Ray") less the loan balance payoff of approximately $14,000. The agreement further provided that the loan balance would be paid off by Fort McHenry at the closing on the sale of the Senator yacht.

The closing took place on November 1, 1986, in Baltimore, Maryland. At the closing no provision was made to pay the loan balance on the Sea Ray. Plaintiffs were informed that Fort McHenry desired to delay paying off the loan balance until the Sea Ray was sold. Defendant Sandra Reynolds assured plaintiffs that there were buyers available for the purchase of the Sea Ray and that it would be sold within a few weeks. Plaintiffs agreed to this arrangement.

Contemporaneous with the closing Senator took possession of the Sea Ray and arranged for Fort McHenry to sell it on Senator's behalf. Further, Senator undertook the obligation to pay off the loan balance upon sale and to make the loan payments until the sale occurred.

In December, 1986, Fort McHenry sold the Sea Ray and forwarded a check for $16,126.50 to Senator. Defendants, in their capacity as the officers, directors, and sole shareholders of Senator deposited the check in its corporate account. However, instead of paying the loan balance on the Sea Ray, defendants used the monies to pay general corporate expenses. Between December, 1986, and August, 1987, defendants represented to plaintiffs that the Sea Ray had not yet been sold and that Senator would pay off the loan balance as soon as the boat was sold. Senator continued to make the payments on the Sea Ray loan between December, 1986, and August, 1987, but made no payments after August, 1987.

In March, 1988, plaintiffs filed an eight-count complaint in a Maryland court against defendants alleging fraud, conversion, negligence, violations of state consumer protection laws, breach of their fiduciary duty and bailment. Defendants answered and asserted numerous affirmative defenses.

Discovery requests were served on defendants and their depositions scheduled. However, defendants failed to answer discovery or appear at deposition. As a result, the Maryland court sanctioned defendants by entering a default judgment as to liability in favor of plaintiffs. The issue of damages was then presented to a jury. At this phase of the trial the defendants appeared and were represented by counsel. The jury awarded plaintiffs $45,000 in compensatory damages and $105,000 in punitive damages.

On June 13, 1989, defendants petitioned for Chapter 7 relief. On September 18, 1989, plaintiffs filed this adversary proceeding seeking exception to discharge of the debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6).

At trial, this Court ruled that the compensatory damages but not the punitive damages were excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). The Court reserved ruling as to whether it was bound to accept the Maryland compensatory damages award or was free to enter damages predicated upon the evidence presented in this adversary proceeding. The Court now addresses that issue.

## CONCLUSIONS OF LAW

In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the United States Supreme Court held that a bankruptcy court is not bound by the doctrine of *res judicata* in dischargeability proceedings. However, the Court expressly declined to rule on the issue of whether a bankruptcy court is bound by the narrower concept of collateral estoppel in dischargeability proceedings. 442 U.S. at 138–139, 99 S.Ct. at 2212–2213.

The U.S. Court of Appeals for the Eleventh Circuit has extended the holding in *Brown* and has held that a bankruptcy court is bound by the doctrine of collateral estoppel in dischargeability proceedings under certain circumstances. *See In re*

*Latch,* 820 F.2d 1163, 1166 (11th Cir.1987); *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987); *In re Powell,* 95 B.R. 236, 238 (Bankr.S.D.Fla.1987). In order for collateral estoppel to apply in dischargeability proceedings to preclude the redetermination of issues, three elements must be present:

(1) The issue in question in the present litigation must be identical to the issue involved in the prior litigation;

(2) The issue in question must have been actually litigated in the prior litigation; and

(3) The determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

*In re Halpern,* 810 F.2d at 1064; *In re Held,* 734 F.2d 628, 629 (11th Cir.1984).

The issue in question in this adversary proceeding is the determination of the proper measure of damages under a theory of conversion.

As to the first element required by *Halpern,* the Court finds that the issue in the instant adversary proceeding is identical to one of the issues in the Maryland action. The Maryland action also contained a count for conversion.

The second element of *Halpern* is also present. The issue in question was actually litigated in the damages phase of the Maryland action. In the Maryland proceeding, plaintiffs introduced evidence as to damages and defendants were given the opportunity to rebut this evidence. Thus, the Court concludes that the "actually litigated" element has been met.

■ The third element of *Halpern* is not met in this adversary proceeding. The measure of damages under the conversion count was not a "critical and necessary part of the judgment in that earlier action." The Maryland action contained eight counts, each distinct and involving its own set of elements, burdens of proof, and measure of damages. Indeed, the Maryland jury could have been awarding compensatory damages under any, or all, of the counts in the complaint. No evidence was present-

ed so as to make the conversion count a "critical and necessary part of the judgment." This Court is not persuaded that the jury sitting solely for damages awarded $45,000 on the conversion count alone.

This Court concludes that, as a matter of law, the doctrine of collateral estoppel does not apply to the issue of damages under a theory of conversion. The Court will look to the evidence presented in this adversary proceeding to determine damages.

■ Under Maryland law, conversion damages are generally limited to the fair market value of the property at the time of the conversion plus legal interest running to the date of the verdict. *Abbott v. Forest Hill State Bank,* 483 A.2d 387, 390 (Md. App.1984). Also, additional damages sufficient to compensate an owner for other injurious consequences of the conversion may be allowed unless they are overly speculative. *Staub v. Staub,* 37 Md.App. 141, 376 A.2d 1129, 113 (1977).

■ Evidence showed that plaintiffs were required to make nineteen payments on the Sea Ray, after defendants stopped servicing the loan, totalling $4,629.73. Eventually, plaintiffs paid off the Sea Ray loan in the amount of $12,000.00.

■ Plaintiffs claim they were further damaged due to the fact they had to pay higher interest rates on other loans they obtained during the pendency of these proceedings. The Court finds this evidence too speculative to support an award of damages.

## CONCLUSION

The plaintiffs have proven damages in the amount of $16,629.73. A separate Final Judgment will be entered excepting this debt from discharge.