**In re Thomas E. JAQUIS, Debtor.**

**Susan HARRIS, Plaintiff,**

**v.**

**Thomas E. JAQUIS, Defendant.**

**Bankruptcy No. 90–12546–8P7.**
**Adv. No. 91–145.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 4, 1991.

Jeffrey H. Friedman, Dawn A. Carapella, for plaintiff.

Jay B. Verona, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Motion for Summary Judgment filed in a complaint which seeks the determination that a certain debt owed to Susan Harris (Ms. Harris) by Thomas E. Jaquis (Debtor) should be excluded from the overall protection of the general bankruptcy discharge. The claim of nondischargeability asserted by Ms. Harris is brought pursuant to § 523(c) of the Bankruptcy Code and based on the allegations that liability of the Debtor is a result of a willful, malicious injury to the person of Ms. Harris. The Motion under consideration is filed by the Debtor who contends that there are no genuine issues of material facts and that he is entitled to a judgment in his favor as a matter of law.

The facts which are relevant to the resolution of the matter under consideration are indeed without dispute and can be briefly summarized as follows:

Ms. Harris and the Debtor were married on December 9, 1989. However, the marriage did not last long. On February 21, 1990 the Debtor filed a Petition for Dissolution of the marriage in Circuit Court for Pinellas County, Florida, Case No. 90–3217–9. On February 26, 1990 Ms. Harris filed a Response to the Debtor's Petition, coupled with a "Request For Affirmative Relief." In her Response, Ms. Harris admitted that the allegations set forth in the Petition, with some exceptions, were not relevant. In her "Request For Affirmative Relief", Ms. Harris asserted an entitlement to temporary and rehabilitative alimony; attorney fees; a need to obtain funds to move her furniture back to Ohio; and a request that her maiden name be restored. In addition, she alleged in her Response that during her marriage to the Debtor, he infected her with genital herpes, a chronic

condition which will require prescription medication and medical attention for the remainder of her life. Therefore, she sought a money award sufficient to enable her to meet the medical expenses connected with her infection. She also alleged that the Debtor battered her "by seducing her and fraudulently concealing his genital herpes condition" (sic).

Prior to the final hearing in the divorce proceedings, Plaintiff's counsel filed a Notice of Dismissal *without prejudice* of her request for affirmative relief based on her alleged contraction of genital herpes, but not the other reliefs sought by her in her Response to the Petition filed by her former husband. Neither the Court nor Defendant's counsel objected to the dismissal *without prejudice.*

On March 9, 1990, the Circuit Court entered the Final Judgment dissolving the marriage of the parties. The Final Judgment recited, inter alia, that neither Ms. Harris nor her attorney were willing to participate in a non-jury trial; and that the Court after having heard the testimony of the Debtor dissolved the bonds of marriage between the Debtor and Ms. Harris. The Judgment further provided that the temporary injunction which the Court entered before was confirmed and made permanent, and each party was ordered to pay their own costs and attorney fees. Most importantly, the Final Judgment denied all of the remaining prayers for relief whether contained in Debtor's petition for dissolution of marriage or in Ms. Harris' request for affirmative relief.

The record further reveals that on July 13, 1990, Ms. Harris filed a suit in the U.S. District Court, Northern District of Ohio, Eastern Division, against the Debtor, and sought a money judgment in Count I based on negligence; in Count II based on negligence per se; in Count III based on damages based on fraud; in Count IV based on intentional infliction of emotional distress; in Count V based on negligent infliction of emotional distress; in Count VI based on loss of enjoyment of life. In her complaint, she sought compensatory, punitive and "hedonic" (sic) damages plus reasonable attorneys' fees.

Before the suit filed in Ohio came to resolution, the Debtor filed his voluntary petition for relief which, of course, by virtue of the operation of the automatic stay, stopped all further proceedings in that action and compelled Ms. Harris to assert the claim of nondischargeability in this Court by virtue of § 523(c) of the Bankruptcy Code.

These are the undisputed facts based on which the Debtor contends that, based on the doctrine of *res judicata*, Ms. Harris is barred to litigate her claim against him. In support of this proposition, the Debtor points out, the doctrine of *res judicata* comes into operation not only when issues were actually tried between the same parties but also when the issues could have been tried and when the prior dismissal was based on lack of prosecution of an "identical claim". (emphasis supplied). *In re Daily,* 125 B.R. 816 (Bankr.D.Hawaii 1991). Thus, according to the Debtor, the fact that her claim related to her infection was not actually tried in a divorce Court is of no consequence and notwithstanding, she can no longer litigate that claim because it could have been litigated in the divorce Court. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 560 (5th Cir.1983); *Lovell v. Mixon,* 719 F.2d 1373 (8th Cir.1983).

In opposition, Ms. Harris contends first that prior to the final hearing in a divorce proceeding, she voluntarily dismissed her claims for affirmative relief associated with her contraction of genital herpes and this claim was never considered by the Circuit Court; second, the doctrine of *res judicata* cannot be applied because the Circuit Court lacked jurisdiction of her claim related to her infection of genital herpes by virtue of the doctrine of interspousal immunity recognized in this State which prohibits suits by one spouse against the other, based on tort occurred during the marriage, *Amendola v. Amendola,* 121 So.2d 805 (Fla. 2d DCA 1960) and it is only after the marriage is dissolved that a spouse could sue the former spouse for the tort committed by him prior to the marriage.

*Gaston v. Pittman,* 224 So.2d 326 (Fla. 1969).

▮ In considering the respective contentions of the parties, it should be noted at the outset that the question whether the Bankruptcy Court is bound by a prior Circuit Court judgment and by virtue of the doctrines of *res judicata* or collateral estoppel, the Bankruptcy Court may no longer consider claims litigated in a non-bankruptcy forum, has not received uniform treatments by the Courts. For instance, the Ninth Circuit held that the exclusive jurisdictional grant of the Bankruptcy Court precludes the application of the doctrine of collateral estoppel regarding the issue of nondischargeability of debts. *Matter of Kasler,* 611 F.2d 308 (BAP 9th Cir.1979); *Matter of Daniels,* 91 B.R. 981, 983 (Bankr.M.D.Fla.1988); *cf., In re DiNoto,* 46 B.R. 489 (9th Cir.BAP 1984). On the other hand, Bankruptcy Courts in the Fifth, Sixth, Seventh and Eleventh Circuits may apply the doctrine of collateral estoppel of state court judgments to nondischargeability § 523(a) issues. *Daniels* at 983 *citing, Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir. 1987); and *Halpern v. First Georgia Bank,* 810 F.2d 1061 (11th Cir.1987). Although these cases involved the application of the doctrine of collateral estoppel, there is no valid reason why the principles annunciated by these decisions should not equally be applied to the doctrine of *res judicata.* It is clear that under the appropriate circumstances in this Circuit, there is precedent to apply the doctrine of collateral estoppel to prohibit litigating the claim in the Bankruptcy Court when the claim was already litigated in a non-bankruptcy forum and was resolved by entry of a Final Judgment against the Debtor prior to the commencement of a bankruptcy. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). *In re Halpern, supra.*

▮ In this case, there was no prior determination of liability of the Debtor based on Ms. Harris' claim related to her genital herpes infection, either after trial, as in

*Ikner v. Miller,* 477 So.2d 387, 389 (Ala. 1985); and *In re Held,* 734 F.2d 628 (11th Cir.1984); or by a Final Judgment by consent as in *In re Halpern, supra;* or by default as in *Kelleran v. Andrijevic,* 825 F.2d 692 (2nd Cir.1987). In the present instance, it is conceded that the claim of Ms. Harris, based on her genital herpes infection, was not litigated in a Circuit Court in connection with the divorce proceedings. Thus, the general principles enunciated by the authorities cited are not very helpful and do not furnish a satisfactory resolution of the Debtor's motion because one must still consider the question of whether or not Ms. Harris could have litigated her claim connected with the genital herpes infection in a divorce case in the Circuit Court. This is so because, as noted earlier, the doctrine precludes relitigation of not only claims which were already tried, but also claims which could have been tried.

Thus, in order to avoid the teaching of *Allen v. McCurry, supra,* and *Nilsen v. City of Moss Point, Miss., supra,* Ms. Harris must establish that she could not have litigated her herpes-connected claim in a divorce court. In support of this proposition, she points out that she had voluntarily dismissed her claim related to her genital herpes condition prior to the trial and, in the alternative, that her claim could not have been tried by the Circuit Court because of the doctrine of interspousal immunity. Therefore, the doctrine of *res judicata* presents no bar to litigate her claim of nondischargeability in this Court.

Considering these contentions, *seriatim,* one must first consider the rule of procedure which governs voluntary dismissal of civil suits in the courts of this State, Fl. R.Civ.P. 1.190. In considering the operation of this rule, the Fourth District Court of Appeals held that a Notice of Dismissal by a Plaintiff of one of the causes of action was a nullity because only an entire action may be voluntarily dismissed and under this rule there cannot be a partial dismissal. *Deseret Ranches of Florida, Inc. v. Bowman,* 340 So.2d 1232 (Fla. 4th DCA 1976); *Marine Contractors v. Armco, Inc.,* 452 So.2d 77 (Fla. 2d DCA 1984); *Lauda v.*

*H.F. Mason Equipment Corp.*, 407 So.2d 392 (Fla. 3d DCA 1981).

■ The Notice of Dismissal filed by Ms. Harris in the Circuit Court was limited to her request for affirmative relief based on her claim that the Debtor infected her with genital herpes. Her Notice of Dismissal did not relate to her additional requests for affirmative relief which, inter alia, included a demand for attorney's fees and her request for temporary and rehabilitative alimony and funds in order to enable her to move her furniture back to Ohio. Thus, based on the authorities cited, this Court is satisfied that her Notice of Dismissal was of no effect and, in fact, was a legal nullity. *Deseret Ranches, supra; Davis v. Dieujuste*, 496 So.2d 806 (Fla. 1986). In the case of *Finston v. Finston*, 160 Fla. 935, 37 So.2d 423 (Fla.1948), the Court held that "*res judicata* constitutes a complete defense to the claim of [the former wife] embodied in the complaint on which the judgment or appeal is based." The rule in *Finston v. Finston, supra,* was further expanded in *Cooper v. Cooper*, 69 So.2d 881 (Fla.1954), where the Court held that even though claims to adjust property rights were not introduced in the litigation, they could or should have been introduced and thus could no longer be raised in any subsequent litigation. *Estabrook v. Wise*, 348 So.2d 355 (Fla. 1st DCA 1977); *Simon v. Simon*, 293 So.2d 780 (Fla. 3d DCA 1974); *Thompson v. Thompson*, 223 So.2d 95 (Fla. 2d DCA 1969); *Boswell v. Boswell*, 352 So.2d 91 (Fla. 4th DCA 1977). Based on the foregoing, there is hardly any question that Ms. Harris could not maintain a suit for a claim connected with her genital herpes infection in the Circuit Court which entered Final Judgment dissolving the marriage.

This in turn leads to the question whether or not Ms. Harris could not have litigated her claim related to her infection in a Circuit Court because of the doctrine of interspousal immunity recognized in this State. The doctrine of interspousal immunity bars the wife's recovery from her husband during the marriage albeit she may obtain relief in her divorce proceeding because a trial Court could use its discretion to fashion a money award for the wife. Courts may take into consideration any factor necessary to "do equity and justice between parties." Fla.Stat. § 61.08; *Gordon v. Gordon*, 443 So.2d 282 (Fla. 2d DCA 1983); *Hill v. Hill*, 415 So.2d 20 (Fla.1982).

■ The doctrine of interspousal immunity was abrogated by the Florida Legislature in 1985 with the enactment of *Fla. Stat.* § 741.235 concerning the intentional tort of battery. Thus, it is clear that Ms. Harris not only could have litigated her claim of intentional battery, but she could have sought an award for monetary support which, in turn, would have enabled her to meet the medical expenses connected with her genital herpes infection. In the case of *Schiffhauer v. Schiffhauer*, 485 So.2d 838 (Fla. 1st DCA 1986), the wife was, in fact, permitted to assert a claim against her spouse related to her alleged infection of genital herpes by her husband and the divorce court did, in fact, order the spouse to pay all reasonable future medical costs of the wife which she may incur as a result of her herpes condition. Although *Schiffhauer* did not bring into play the doctrine of interspousal immunity, the claim of the wife was based on something which occurred during the marriage, and whether or not the claim is asserted from a willful and intentional tort of battery or based on fraud or merely a claim to obtain support is really of no consequence. In addition, it should be noted that the defense of interspousal immunity is an affirmative defense which is waived if not raised. *De Guido v. De Guido*, 308 So.2d 609 (Fla. 3d DCA 1975). The Debtor did not assert a defense of interspousal immunity in a divorce case and for this reason, this defense was effectively waived. For the reasons stated, this Court is satisfied that Ms. Harris was not prevented to litigate her herpes related claim in the divorce proceeding because of the interspousal immunity, instead she failed to do so.

■ In sum, this record leaves no doubt that neither the fact that Ms. Harris voluntarily dismissed her genital herpes related claim, nor the application of the interspousal immunity preserved her right to litigate this claim in the Circuit Court. Thus, the doctrine of *res judicata* would bar her to

assert a claim of nondischargeability in this Court, unless the claim pursued by Ms. Harris in this Court is different and not identical to the claim she could have asserted in the Circuit Court.

Her claim in the Circuit Court, which she voluntarily dismissed, was based on the contention that she contracted her genital herpes infection from her former husband, the Debtor. The claim set forth in her request for affirmative relief was presented, albeit not very well articulated, as a claim based on "battery by seducing her and fraudulently concealing his genital condition" (sic). The claim presented in this Court is based on her claim that the liability of the Debtor is the *result of willful, malicious injury suffered by her.* It needs no extensive discussion to reach the conclusion that her claim in the Circuit Court was based on intentional tort of battery and in order to prevail, she would have been required to establish the same operating elements in the Circuit Court that she must prove in order to establish her claim of nondischargeability pursuant to § 523(a)(6) of the Bankruptcy Code in this Court. Moreover, the standard of proof is identical in both forums, i.e. mere preponderance, *Grogan v. Garner,* 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), and no longer the standard of clear and convincing evidence which was previously the rule in this Circuit. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1262 (11th Cir. 1988). Based on the foregoing, the doctrine of *res judicata* presents a total bar to assert her claim of nondischargeability based on battery pursuant to § 523(a)(6).

To the extent her claim asserted in this Court is based on various theories of negligence, it is evident that she cannot assert a viable claim of nondischargeability pursuant to § 523(a)(6) in this Court, simply because a claim based on negligence cannot form the basis of a claim of nondischargeability pursuant to § 523(a)(6) as a matter of law. In order to sustain the claim under this Section, the term "willful and malicious" means an intentional act which causes injury. See, *e.g., In re Cecchini,* 772 F.2d 1493 (9th Cir.1985); *In re Finnie,* 10 B.R. 262 (Bankr.D.Mass.1981); *cf. In re DeRosa,* 20 B.R. 307 (Bankr.S.D.N.Y.1982) ("Willful and malicious" requires an intent and it results in injury). A claim based on mere negligence, however gross, cannot support a claim of nondischargeability under § 523(a)(6).

Based on the uncontested facts, this Court is satisfied that there are no issues of material facts and that the Debtor is entitled to Judgment as a matter of law. Therefore, it is appropriate to enter a separate Final Judgment in favor of the Debtor and against Ms. Harris dismissing her claim with prejudice.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment is hereby granted.

DONE AND ORDERED.