**In re Alexander Charles WALLACE, Debtor.**

**Bankruptcy No. 94–02545–8C7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 25, 1996.

Michael Moran, Joy & Moran, Sarasota, Florida, for debtor.

Donald F. Walton, Trustee, Tampa, Florida.

Benjamin Lambers, Office of United States Trustee, Tampa, Florida, for Trustee.

### *ORDER ON MOTION FOR SUMMARY JUDGMENT REGARDING EXEMPTION LITIGATION*

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case came on for consideration on the Chapter 7 trustee's motion for summary judgment (Document No. 145) with respect to his amended objection to debtor's claim of exemption.

#### I. *Procedural status.*

The motion arises in the following way:

The debtor filed an amended Schedule C in which he claimed certain of his personal property as exempt. (Document No. 119). The trustee filed an objection to the debtor's amended claim of exemption (Document No. 132) and later filed an amended objection. (Document No. 140). The trustee then filed a motion for summary judgment and a memorandum of law with Rule 56 supporting materials. (Documents Nos. 145 and 146). The debtor filed a response with Rule 56 opposing materials. (Document No. 152). The trustee filed a reply brief. (Document No. 155). The issues are therefore ripe and ready for decision on the papers pursuant to the court's earlier case management and *Milburn* order. (Document No. 142).

## II. *Factual background.*

The summary judgment record made by the parties reveals the following undisputed facts:

On March 16, 1994, the debtor filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code. The debtor filed his schedules and statement of financial affairs on April 29, 1994. On May 2, 1994, the debtor filed a motion to convert the case to a case under Chapter 11 of the Bankruptcy Code. (Document No. 39). On May 18, 1994, Enterprise National Bank of Sarasota, a major creditor, filed an objection to that motion and alternatively sought reconversion to Chapter 7, the appointment of a Chapter 11 trustee, or dismissal. (Document No. 45). On July 22, 1994, the court conducted an evidentiary hearing.

On August 19, 1994, the court denied the debtor's motion to convert and retained the case as a case under Chapter 7. (Document No. 79). The court's order was based on specific findings of fact and conclusions of law that the court entered simultaneously. (Document No. 80). In those findings and conclusions, the court found, among other things, that "[t]he testimony presented by numerous witnesses and documentary evidence clearly established a pattern of undisclosed and fraudulent transfers of assets [by the debtor], both during the one year immediately preceding his Chapter 7 filing and continuing thereafter." (*Id.* at 6). The court found that the debtor had used an assumed name to rent storage facilities to secret and transfer assets and made extensive efforts to conceal, secret, and transfer his assets, including extensive collections of antique clocks and furnishings. (*Id.* at 7). In addition, the court found that "[d]eposition testimony of Bijan Nassi on July 15, 1994, further evidences that debtor, Alexander Charles Wallace, failed to disclose or to turnover the proceeds from the sale of such remaining consignment antiques, with the proceeds of said sale being post-petition assets of debtor totaling in excess of $10,000.00 in cash." (*Id.* at 8). The court also found that the testimony of Gregory Barca established that Gregory Barca had not authorized the debtor to utilize his name for the purpose of purchasing automobiles (*id.* at 6) and that the testimony of Donald Winter and Rodney Dessberg evidenced that the debtor had held himself out as Gregory Barca for the purposes of selling and transferring a 1967 four-door Jaguar during March 1994. (*Id.* at 7).

On August 15, 1994, the original Chapter 7 trustee, Traci Strickland, filed an objection to the debtor's claim of exemptions alleging, among other things, a lack of specificity. (Document No. 77). On August 26, 1994, the debtor filed his response to the trustee's objection alleging that the debtor would have specified the items he intended to claim but the assets had been seized by the trustee and the debtor did not have a list of the seized assets. (Document No. 81).

On September 29, 1994, the court entered an order sustaining the trustee's objection. (Document No. 85). The court disallowed the claimed exemptions as found within Schedule C and required the debtor to file an amended Schedule C. The court wrote:

1. The Objection to Claimed Exemptions filed by Traci Strickland be, and is hereby, sustained and the Debtor's claim of exemptions as found within Schedule C filed by the Debtor in the above Chapter 7 case be, and are hereby, disallowed.

2. The Debtor shall have thirty (30) days from the date of this Order within which to file an Amended Schedule C setting forth that property lawfully and properly claimed to be exempt. Upon the filing of such Amended Schedule C, Counsel for the Debtor shall serve a copy of the same upon all creditors and parties-in-interest as listed on the official Court' matrix.

3. In the event the Debtor fails to file an Amended Schedule C within thirty (30) days from the date of this Order th[e]n all claim of exemptions by the Debtor shall be considered disallowed with prejudice without further order of the court.

On August 18, 1995, the debtor filed his amended Schedule C.[1] (Document No. 119).

---

1. The court had entered several orders extending the time originally set for the debtor to file the amended Schedule C. (Documents Nos. 96, 104, and 111).

In the amended schedule, the debtor made few claims of exemption. The debtor claimed only "household furnishings and all books" held by Robert Bonnell in Brooksville, Florida (which he valued at $800); "household furnishings" held by Robert Bonnell in Sarasota, Florida (which he valued at $200); "[a]ll professional portfolio items; Drawings, photographs, designs, publicity materials and all intellectual property" held by Robert Bonnell in Sarasota, Florida (which he said had no cash value); and the 1981 Cadillac Eldorado (which he valued at $400). The debtor did not claim any real property as exempt. The debtor also did not claim any exemption with respect to the personal property located at 1721 8th Street, Sarasota, Florida; the 1973 Ford van; the 1973 Mercedes Benz 450 SE automobile; or the 1968 Lincoln automobile. In his original Schedule C, the debtor claimed many of these items as well as several parcels of real property. (Document No. 31).

Traci Strickland resigned as trustee on August 31, 1995, and the acting United States Trustee, Donald F. Walton, became the trustee. Mr. Walton objected to the debtor's amended claim of exemptions on September 15, 1995, and amended his objection on October 4, 1995. (Documents Nos. 132 and 140). On October 12, 1995, the court considered Donald F. Walton's objection on a preliminary basis. At that hearing, counsel for the debtor stated that the amended Schedule C was intended to supplement the original Schedule C and not to replace it or supersede it. The court has scheduled the contested matter for a final evidentiary hearing on January 30, 1996.

### III. Discussion.

In the motion for summary judgment, the trustee urges that, with respect to the exemption litigation, the debtor is collaterally estopped from relitigating the matters established in the findings of fact and conclusions of law regarding conversion to Chapter 11 entered on August 19, 1994 (Document No. 80), to the effect that the debtor transferred, removed, and concealed property of the estate. The trustee further urges that, because the debtor transferred, removed, and concealed property of the estate, that property may be charged against the debtor's exemptions. Thus, the trustee argues, the debtor should be denied his exemptions.

### A. Collateral Estoppel.

Halpern v. First Georgia Bank (In re Halpern), 810 F.2d 1061, 1064 (11th Cir. 1987), sets forth the applicable elements for applying collateral estoppel. Those elements are:

1. The issue at stake must be identical to the one involved in the prior litigation;

2. The issue must have been actually litigated in the prior litigation; and

3. The determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

The factual determinations concerning "undisclosed and fraudulent transfers of assets" as set forth in the August 19, 1994, findings meet this three-part test.

Two matters were at issue at the July 22, 1994, evidentiary hearing that led to the August 19, 1994, orders. Those issues were:

1. Whether the debtor had a reasonable likelihood of rehabilitation and had the ability to effectuate a Chapter 11 plan; and

2. Whether there had been fraud and dishonesty by the debtor.

The issues as to undisclosed assets and transfers of assets present in this litigation are identical to the issues litigated in the conversion litigation. The issue of fraud and dishonesty that was actually and fully litigated and determined at the July 22, 1994, hearing was that involving the transfer, sale, and concealment of personal property and automobiles that is a issue now in the context of the exemption litigation. Indeed, there was substantial testimony and evidence adduced at that hearing as to these transfers, sales, and concealments. Although the debtor was not present at the July 22, 1994, hearing in the conversion litigation, he was fully, completely and ably represented by counsel who actively participated at the hearing. The court's determination of these issues was a critical and necessary part of the

decision in the conversion litigation. The issue of whether the debtor had engaged in fraudulent and dishonest conduct was a material factor in the conversion litigation because conversion to Chapter 11 would have put the debtor in possession and control of the estate as a fiduciary. The final order denying the debtor's motion to convert that was based upon the court's findings and conclusions was entered on August 19, 1994. It is final and unappealed.

This court has previously considered the collateral estoppel effect of the August 19, 1994, findings on another occasion in this case. In Adversary Proceeding No. 94–374, involving the debtor's right to a discharge, the court entered an order on March 21, 1995, entitled order on plaintiff's motion for summary judgment and scheduling preliminary pretrial and discovery conference. (A.P.Document No. 12). In that order, the court wrote:

> The court concludes, therefore, that Mr. Wallace is collaterally estopped in this discharge litigation from relitigating the factual determinations previously made by the court to the effect that he transferred, removed, and concealed his property within one year before the filing of the petition and property of the estate after the date of the filing of the petition. The plaintiffs are entitled to summary judgment on this point.

(*Id.* at 8–9). Although the court went on to hold in that order that the issue of the debtor's intent to defraud creditors neither had been in issue nor determined in the conversion litigation so that the intent issue would be tried in the discharge litigation, the court nevertheless applied collateral estoppel effect to the transfers and concealments that were determined in the conversion litigation. (*Id.*).

The trustee is likewise entitled to rely in this exemption litigation on this court's prior factual determinations concerning "undisclosed and fraudulent transfers of assets" made in the conversion litigation.

B. *Charging concealed property against the personal property and automobile exemptions.*

 "It is the settled law in Florida that the debtor's exemptions may be charged with

property that he concealed or withholds from his creditors at the time of the levy; the concealment of it, or his failure to surrender it, is treated as a selection pro tanto by the debtor of his property exemptions." *Libby v. Beverly*, 263 F. 63, 64–65 (5th Cir.1920), *citing Florida Loan & Trust Co. v. Crabb*, 45 Fla. 306, 33 So. 523 (1903). Similarly, where a debtor fails to turn over property to the trustee or fails to account adequately for property of the estate, the court may charge against the personal property exemptions allowed under Florida law. *Libby* at 65.

In the *Libby* case, the debtor failed to account for between $600 and $700 received shortly before filing the bankruptcy case. The court of appeals upheld the district court in its determination that, under Florida law, the monies for which the debtor could not account could be applied against the $1,000 personal property exemption. *Id.*

 Unlike the situation in discharge litigation where the debtor's specific intent to defraud creditors is an issue, under these authorities no specific finding of fraudulent or corrupt intent on the part of the debtor is necessary to charge against personal property and automobile exemptions that are otherwise allowed under Florida law. In *Libby*, it was the mere failure to surrender or account for the property at issue that permitted the court to charge the unaccounted for assets against the debtor's personal property exemption. The motivation is not to punish the debtor for committing fraud; the purpose is merely to restore to the estate the property that should have been available to the estate on the date of the filing. *Id.* A specific finding of intent is unnecessary. Intent is inferred as a matter of law from the conduct itself.

In the instant case, the facts found on August 19, 1994, in the conversion litigation establish that the debtor concealed, secreted, and transferred substantial amounts of personal property, including extensive collections of antique clocks and furnishings. The court found that the proceeds from one sale of antiques in New York alone represented over $10,000. The court also found the pro-

ceeds from the sale of one Jaguar automobile alone represented $3,000. On this summary judgment record, the debtor has offered nothing sufficient to account for those proceeds.[2] It is therefore appropriate that at least $10,000 should be applied against the personal property exemption and at least $3,000 should be applied against the automobile exemption that would otherwise be allowed the debtor under Florida law. This charge exhausts these allowable exemptions.[3]

As a consequence, the court concludes that there are no disputed issues of material fact and that the trustee is entitled to judgment as a matter of law as to his objection to the debtor's claim of personal property and automobile exemptions. Based upon the facts established in the August 19, 1994, findings and the summary judgment record made by the parties, the authorities described here compel the court to conclude that the debtor is not entitled to any personal property or automobile exemptions. All of the debtor's personal property and automobiles are therefore property of the estate subject to administration by the trustee.

### C. *Real property.*

The trustee also urges that the debtor be denied his homestead exemption in the residential real property located at 1721 8th Street, Sarasota, Florida, under two theories: first, the debtor's concealed personal property and automobiles should be charged against the homestead exemption as well as the personal property and automobile exemptions; and, second, the debtor has failed to claim the residential property as exempt by not including it in the amended Schedule C.

■ On the first point, the *Crabb* and *Libby* cases cannot be read to preclude the debtor from claiming the homestead exemption with respect to real property he disclosed, when it is automobiles and personal property that he has failed to turn over and has transferred, removed, and concealed. *Crabb,* 45 Fla. at 310, 33 So. at 524, specifically makes this point.

■ As to the trustee's second contention, the record is insufficient for the court to decide, on a summary judgment basis, that the debtor's amended Schedule C filed on August 18, 1995, waived the homestead exemption that the debtor previously claimed. Given the debtor's argument that the amended schedule was intended to supplement and

---

**2.** In his Rule 56 opposing materials, the debtor has offered an affidavit of Vaughn R. Aitken, Jr. (Document No. 152, Ex. C). In this affidavit, Mr. Aitken says that Mr. Wallace consigned Mr. Aitken's antique furnishings for sale at "Christy's East" and "Bijan Royal, Inc. Antiques" in New York and that Mr. Aitken received the sales proceeds of $10,025. If this affidavit is offered to explain or account for the proceeds of the Christie's East and Bijan Royal Antiques sales described by the court at pages 7–8 of the August 19, 1994, findings and conclusions in the conversion litigation, the debtor is collaterally estopped from relitigating the facts determined by the court in those findings. One of the facts so determined was that those sales involved the *debtor's* antiques. The affidavit therefore cannot create a dispute of material fact in this summary judgment record on that point. Even if it did, however, so that the Christie's East and Bijan Royal Antiques sales were excluded from the court's consideration in connection with the motion for summary judgment, the evidence adduced at the July 22, 1994, hearing and the findings and conclusions made by the court on August 19, 1994, in the conversion litigation describe an overwhelming pattern of concealing, secreting, and transferring personal property the value of which greatly exceeds the $1,000 per-

sonal property exemption allowed by law. See n. 3, *infra.* The same result would therefore obtain. Finally, even if this were not the case, the $3,000 in unaccounted for proceeds from the sale of the Jaguar automobile alone would exhaust both the $1,000 automobile exemption and the $1,000 personal property exemption. *Id.*

**3.** Florida exemptions, of course, control in this case. 11 U.S.C. § 522(b)(1); Fla.Stat. § 222.20. Florida permits a debtor to claim as exempt personal property the value of which does not exceed $1,000. Art. X, § 4(a)(2), Fla. Const. Florida also permits a debtor to claim as exempt the "debtor's interest, not to exceed $1,000 in value, in a single motor vehicle." Fla.Stat. § 222.25(1). The debtor has failed to account for personal property and automobiles well in excess of these permissible exemption amounts. When the unaccounted for proceeds are charged against the exemptions, the charge exhausts the permissible exempt amounts. The debtor is therefore entitled to no personal property or automobile exemptions. This conclusion makes moot the issue of whether the debtor's amended Schedule C supplements or replaces the original Schedule C as to personal property and automobiles.

not replace the original schedule, the court will need further evidentiary development at trial before being able to rule on this point. If the court concludes that the debtor has preserved the claim of homestead exemption, the court will also need to take testimony and evidence at trial with respect to the merits of the debtor's claim of homestead exemption.

### D. *Conclusion and Direction for Entry of Judgment.*

For the foregoing reasons, the trustee's motion for summary judgment with respect to his amended objection to the debtor's claim of exemption is granted in part and denied in part. It is granted with respect to the debtor's claimed personal property and automobile exemptions, and the debtor will be denied any exemption for personal property or automobiles. The trustee's motion for summary judgment is denied with respect to the debtor's claim of homestead exemption for the residential property. The trial of the objection to the claim of exemptions scheduled for January 30, 1996, will therefore be limited to the waiver and homestead issues.

F.R.B.P. 9021 applies F.R.Civ.P. 58 to this contested matter; F.R.B.P. 9014 and 7054(a) apply F.R.Civ.P. 54(b) to this contested matter. Although the decision of the court that this order represents does not determine the issues as to the debtor's claim of homestead exemption, it does fully determine all issues as to the debtor's claim of personal property and automobile exemptions. Because a number of hearings have been held in this case, the court is aware that the trustee has possession of many items of personal property and that the estate is incurring monthly charges for storing this property. The entry of a final judgment as to the debtor's claim of personal property and automobiles will be beneficial in facilitating the sale of this property and the elimination of the storage charges—all to the benefit of creditors and the estate.

Pursuant to the provisions of F.R.Civ.P. 54(b), therefore, the court expressly determines that there is no just reason for delay in the entry of a final judgment as to the debtor's claim of personal property and automobile exemptions. The court expressly directs the entry of judgment as to those claims. Accordingly, the court is contemporaneously entering judgment as to those claims consistent with the decision represented by this order.

### E. *Jurisdiction.*

The court has jurisdiction of the parties and the subject matter pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing general order of reference entered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

DONE and ORDERED.